**Bertash Market Co., a Corporation, Plaintiff-Appellant, v. Jerry Brown, et al., and Diamond Jim's, a Corporation, Defendants-Appellees.**

**Gen. No. 50,566.**

First District, Second Division.
April 19, 1966.
Rehearing denied May 10, 1966.

Marshall Ravich and Melvin B. Lewis, both of Chicago, for appellant.

Erwin Grombacher, of Chicago, for appellees, Jerry Brown, Larry Wolken, Norman Michels, Irving Hollobow and Diamond Jim's, Inc.; Max & Herman Chill, of Chicago (Max Chill and Robert M. Leone, of counsel), for appellee, S. Harvey Klein.

MR. JUSTICE BURKE delivered the opinion of the court.

This appeal is taken from an order sustaining defendants' motions filed under section 48 of the Civil Practice Act (Ill Rev Stats 1963, c 110, par 48) for the dismissal

of the complaint, seeking to recover damages for the defendants' alleged fraudulent conveyance of assets of a corporation indebted to plaintiff.

Plaintiff is an Illinois corporation engaged in the meat business in Chicago. Defendants Wolken and Brown were the principal officers of Wolbrown, Inc., which owned and operated a restaurant business in the Chicago Loop under the name and style of "Diamond Jim's."

On August 16, 1962, plaintiff filed suit against "Wolbrown, Inc., trading as Diamond Jim's," for a balance of $13,000 alleged to be due plaintiff from Wolbrown for meat sold to Wolbrown between February and June of 1962. Attached to the complaint was a billing statement for the said balance, which was directed to "Jerry Brown and Larry Wolken; Diamond Jim's Restaurant; 165 North Dearborn Street; Chicago, Illinois."

In May of 1963, during the pendency of the 1962 lawsuit, Wolbrown, Inc., trading as Diamond Jim's, executed a common-law assignment for the benefit of creditors to defendant S. Harvey Klein. The assignment covered "all property of every kind and character owned by the corporation or in which the corporation has any interest." Notices were thereafter sent to 166 parties informing them of the assignment and that the assets were to be sold on June 11, 1963. The sale commenced on June 11th, but was adjourned until June 13th to afford plaintiff an opportunity to secure a better bid than that which was offered. Plaintiff apparently was unable to secure a better bid and the assets of Wolbrown were sold to defendant Norman Michels on June 13th for the sum of $35,000.

On June 19th plaintiff and two other Wolbrown creditors filed a petition for the involuntary bankruptcy of Wolbrown, Inc., in the United States District Court for the Northern District of Illinois, Eastern Division. Two days later they filed another petition in the Federal Court requesting the appointment of a Trustee in Bankruptcy, the petition alleging, inter alia, that the assets

10

sold to Michels had a value of $125,000 and that the sale to him was false and fraudulent and held for the purpose of defrauding creditors. Charles Maley was appointed Trustee and Wolbrown was adjudged bankrupt a short time thereafter. On July 20th the creditors who petitioned for Wolbrown's bankruptcy filed another petition to allow the creditors' petition to stand as proof of their respective claims as unsecured creditors of the estate of Wolbrown, Inc., which petition was allowed.

Wolbrown, Inc. was discharged of its debts on May 1, 1964, and claims made provable against its estate except those exempted by statute. Subsequently an order was entered in bankruptcy for the distribution of a portion of Wolbrown's assets for the costs and fees of bankruptcy and the balance thereof in part payment of delinquent Federal and State taxes, approving the final account of the Trustee and discharging the Trustee. None of Wolbrown's creditors realized anything. The only objection which plaintiff or anyone else made in connection with the bankrupt's discharge was directed at the allowance of fees and costs to the Trustee and the assignee and their respective attorneys.

On December 14, 1964, plaintiff filed this action against these defendants, alleging that they had engaged in a conspiracy to defraud the creditors of Wolbrown, Inc. The complaint alleged, inter alia, that plaintiff had "furnished meat and meat products to Diamond Jim's restaurant"; that the restaurant business was owned and operated by Wolken and Brown; that Wolbrown, Inc. had no lawful right to transact business under the name and style "Diamond Jim's"; and that by the use of the name and style "Diamond Jim's" defendants Wolken and Brown gave creditors the impression that the restaurant business was owned and operated by a partnership whereas in fact the owner was a corporation, allowing Brown and Wolken to thereby avoid personal liability for debts. Plaintiff claimed that, after Wolken and Brown diverted

11

substantial sums of money from the restaurant business to their own use and benefit, they caused Wolbrown, Inc. to assign its remaining assets to defendant S. Harvey Klein for the purpose of later diverting such assets to themselves and defeating the rights of plaintiff and other creditors similarly situated. The complaint alleged that, after discouraging bidders from bidding for the Wolbrown assets by "inferring that no lease would be made available to any prospective bidder" and "giving notice of the said sale to persons who would either be unwilling or unable to enter a restaurant business," and after rejecting a bid in the amount of $175,000, S. Harvey Klein transferred assets worth $175,000 to Brown and Wolken's nominee, Norman Michels, for the sum of $35,000, the bid having been submitted by defendant Irving Hollobow and said funds having been advanced solely by defendants Brown and Wolken. Without the lease, plaintiff alleged, the restaurant business was valueless. The complaint requested judgment in the amount of $13,000 against each defendant and also that the sale of the assets be found fraudulent and void as against the plaintiff.

Motions were filed by the defendants for dismissal of the complaint. Defendant Klein's motion alleged that plaintiff's claim against him was barred by a prior judgment, was barred by plaintiff's participation in the sale of the Wolbrown assets, and was discharged in bankruptcy. The remaining defendants joined in a single motion, which alleged six grounds for dismissal: (1) that plaintiff did not have legal capacity to sue; (2) that the cause of action was barred by a prior judgment; (3) that the court did not have jurisdiction over the subject matter; (4) that plaintiff's claim was discharged in bankruptcy; (5) that the claim was barred by affirmative matters avoiding the legal effect thereof; and (6) that plaintiff's claim was barred by its own admissions. Attached to both of the motions were affidavits and exhibits relating to the assignment and the sale of the

12

Wolbrown assets, the bankruptcy proceeding and the 1962 lawsuit filed by plaintiff against Wolbrown, Inc. Plaintiff filed motions to strike defendants' motions; neither affidavits nor exhibits were filed by plaintiff in support of its motions to strike. On March 22, 1965, after a hearing on the motions, the trial court ordered that plaintiff's motions to strike be denied, that the motions of the defendants be allowed, and that the plaintiff's complaint be dismissed with prejudice, from which order plaintiff appeals.

Plaintiff maintains that the trial court was in error in dismissing the complaint for the reason that a cause of action was pleaded against these defendants, which was in no way affected by any matters occurring prior to the filing of this complaint.

While it is true, as plaintiff maintains, that the discharge in bankruptcy of a corporation does not discharge debts of the corporation's officers who are co-debtors with the corporation on the debt, 11 USCA § 34, plaintiff's position assumes that it has properly alleged these defendants to be codebtors with Wolbrown, Inc. on its debt for the sales of the meat. Although the complaint does not specifically set out to whom plaintiff sold its meat and meat products, the record clearly indicates that plaintiff's cause of action is grounded upon a debt owing from Wolbrown to plaintiff. The complaint alleges that "meat and meat products were sold, furnished and delivered to a restaurant located at 163 North Dearborn Street, Chicago, Illinois, which restaurant was at all times known, advertised and held out under the trade name and style of Diamond Jim's." The complaint then alleges that the "indebtedness to plaintiff as hereinabove set forth had been contracted over a long period of time by a business organization owned and operated by the defendants Jerry Brown and Larry Wolken, under the trade name and style of Diamond Jim's." The complaint fails to allege any contract between plaintiff and these de-

13

fendants, or defendants Wolken and Brown specifically, nor does it allege any misrepresentation of fact made by any of the defendants at the time of the sales of the meat.

Plaintiff contends that it was induced into extending credit to Brown and Wolken by their holding the business out to be owned and operated by a partnership. The complaint contains no allegation that defendants Wolken and Brown ever made such representation. Furthermore, plaintiff's position in this regard is directly contradicted by its own actions and admissions which show that it looked solely to "Wolbrown, Inc., trading as Diamond Jim's" as its debtor on the sales of the meat. Suit was filed in 1962 against "Wolbrown, Inc., d/b/a Diamond Jim's," the 1962 complaint alleging that the sales of meat were made to the said defendant, that the said defendant had promised to pay for the meat, that billing statements were sent to the said defendant, and that the said defendant had refused to pay same; the complaint requested judgment against "Wolbrown, Inc., trading as Diamond Jim's." That plaintiff did not consider Brown and Wolken to be personally liable for the debt is further evidenced by the fact that at the hearing on the sale of the Wolbrown assets in June of 1963, a representative of plaintiff demanded personal notes from Brown and Wolken for the reason that "I am left out. Now, they could at their own discretion sign personal notes and leave out the person unprotected." Plaintiff and its attorneys appear to have been one of the moving factors in causing the bankruptcy of Wolbrown, Inc. In the petition for Wolbrown's bankruptcy, plaintiff alleged itself to be a creditor of Wolbrown in the amount of $13,000, and later petitioned the bankruptcy court to allow the bankruptcy petition to stand as its claim against Wolbrown. Damages are requested in the instant complaint in the amount of $13,000, the amount requested in the 1962 complaint against Wolbrown, Inc. Under all

14

the circumstances, plaintiff's claim that it believed that it was selling meat, and in fact did sell meat, to defendants Brown and Wolken neither properly appears in its complaint nor is substantiated by the record.

With respect to the alleged fraudulent sale of the Wolbrown assets the complaint pleads only conclusions. Plaintiff took an active part in the sale of the assets, and in fact the sale was adjourned to allow plaintiff to secure a bidder for the property. Plaintiff's representative stated that he was unable to secure a better bid than that which had been offered. The sale is characterized as fraudulent primarily for the reason that the defendants *"inferred* that no lease would be made available to the successful bidder" and that without such lease the restaurant business was valueless. (Emphasis by the Court.) Not only is this statement a conclusion, but is clearly refuted by S. Harvey Klein's letter to creditors which was attached to his motion for involuntary dismissal. The letter informed all creditors of Wolbrown of their right to participate in the sale of the assets and stated "I have been informed by the lessor's representative that the premises are available to any person that might qualify financially and is the successful bidder at the sale. . . . I shall first offer for sale this business free and clear of any encumbrances, bearing in mind that the successful bidder will be in a position to negotiate for the lease, as mentioned above." Nowhere does it appear that defendants "inferred no lease would be made available to the successful bidder."

The claim is made in plaintiff's brief that the lease to the premises was not covered in the assignment for the benefit of creditors. On the contrary, the lease was necessarily included in the assignment under the provision assigning "all property of every kind and character owned by the corporation or in which the corporation has any interest."

15

The complaint alleges that the sale of the assets was offered to persons who "were either unwilling or unable to enter the restaurant business." Notices of the sale were sent to at least 166 parties, including 135 general creditors, 18 note holders, 5 prospective buyers and 8 auctioneers. In addition thereto, the letter to creditors informing them of the assignment to S. Harvey Klein stated that if they knew of anyone who might be interested in bidding at the sale they should have such person either contact S. Harvey Klein or be present at the sale. Plaintiff's allegation in this regard is merely a conclusion.

▇▇▇ It is well settled the mere allegation of a conspiracy does not of itself constitute the allegation of a wrong upon which liability for damages may be predicated. It is the act performed in pursuance of the agreement that may result in liability. Montgomery Ward & Co., Inc. v. United Retail, Wholesale & Department Store Employees, 400 Ill 38, 79 NE2d 46. See also 16 Am Jur2d, Conspiracy §§ 43–55. Plaintiff here has failed to properly allege the act of fraud upon which liability of these defendants for a conspiracy to perform such act could be predicated.

We are of the opinion that the trial court did not err in sustaining defendants' motions to dismiss and in denying plaintiff's motions to strike.

Therefore the order of March 22, 1965, is affirmed.

Order affirmed.

BRYANT, P. J. and LYONS, J., concur.