ADOLPH W. GALINSKI, D.P.M., Plaintiff-Appellee and Appellant, v. SEY-MOUR KESSLER, D.P.M., *et al.*, Defendants-Appellants and Appellees.

First District (4th Division)   Nos. 84—602, 84—832, 84—693 cons.

Opinion filed June 20, 1985.

Holstein, Mack & Associates, of Chicago, for Adolph W. Galinski.

Miles J. Zaremski, Marla S. Persky, Nancy K. Kotler, and Joel W. Rice, all of Fohrman, Lurie, Sklar & Simon, of Chicago, for Seymour Kessler and Warren Levy.

Murphy, Timm, Lennon, Spesia & Ayers, of Joliet, for John Briggs.

Landau & Cleary, Ltd., of Batavia, for Richard I. Polisner.

PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

The plaintiff, Adolph W. Galinski, D.P.M., a licensed podiatrist filed a six-count fifth verified amended complaint against the defendants, Seymour Kessler, D.P.M., John Briggs, Richard Polisner, D.P.M., and Warren Levy, D.P.M., charging the various defendants with barratry, interference with contractual relationships and interference with prospective economic advantage. The defendants filed motions to dismiss and a motion for summary judgment. Motions to dismiss were granted in part and denied in part while the motion for summary judgment was granted. Each party now appeals from the applicable court order.

According to Galinski's complaint, the instant lawsuit arose because in early October 1980, Galinski was retained as an expert witness in an unrelated podiatric malpractice action against Kessler. Galinski alleges that on October 6, 1980, he was contacted by the

defendants and was informed that if Galinski testified against Kessler in the action, then in retaliation multiple malpractice suits would be filed against Galinski by Galinski's former patients. On October 14, 1980, during Galinski's deposition in the malpractice suit against Kessler, Kessler's attorney questioned him about the names of Galinski's former patients. Subsequent to this deposition, five malpractice suits were filed against Galinski, with two of the five lawsuits being initiated by former patients named in the above mentioned deposition. Galinski alleges that the defendants contacted these former patients of Galinski's and encouraged them to file lawsuits against Galinski. The defendants' purpose in contacting Galinski's former patients was to retaliate against Galinski for testifying against Kessler and to prevent Galinski from testifying against Kessler in other known or expected lawsuits filed against Kessler.

Count I of Galinski's complaint charges Kessler with barratry and seeks damages of $1,000,000. Barratry presently exists in Illinois as a petty offense, and the pertinent question is whether it also exists as a common law action for damages.

At common law, barratry, maintenance and champerty were all three offenses aimed at the prevention of multitudinous and useless lawsuits and at the speculation in lawsuits. (See generally 14 Am. Jur. 2d *Champerty & Maintenance* sec. 1 *et seq.* (1964); *Milk Dealers Bottle Exchange v. Schaffer* (1922), 224 Ill. App. 411.) Barratry was defined as the offense of frequently exciting or stirring up suits and quarrels between others. (See 14 Am. Jur. 2d *Champerty & Maintenance* sec. 19 (1964).) Maintenance involved an officious intermeddling in a suit which in no way belongs to the intermeddler by maintaining or assisting either party to the action with money or otherwise to prosecute or defend it. (See 14 C.J.S. *Champerty & Maintenance* sec. 1 (1939).) Champerty was a species of maintenance. It was defined as a bargain with a plaintiff or defendant for a portion of the matter involved in which the champetor undertook to maintain or carry on at his own expense. See 14 Am. Jur. 2d *Champerty & Maintenance* sec. 3 (1964).

Historically, all three offenses were considered *malum in se* and were viewed as being offenses committed against the public welfare. (See generally 14 C.J.S. *Champerty & Maintenance* sec. 3 (1939).) Specifically, barratry was a criminal offense at common law and it has since been made a criminal offense by statutes of many, if not all, the states in the United States. (See Annot., 139 A.L.R. 620 (1942); see also note, *Maintenance by Champerty*, 24 Cal. l. Rev. 48, 67 (1935).) In Illinois, barratry was codified as early as 1827 and in its present

form, the statute classifies barratry as a petty offense. (Ill. Rev. Stat. 1983, ch. 13, par. 21.) As a petty offense, the court may sentence an offender to: (A) a period of conditional discharge; (B) a fine; and (C) make restitution to the victim. Ill. Rev. Stat. 1983, ch. 38, par. 1005—5—3(c)(4).

■ Although barratry has existed as some sort of a criminal offense both at common law and as codified, there is only scant evidence that it may also exist as a common law cause for damages. The authority in Illinois for the proposition that barratry exists as a common law action for damages is in the case of *Berlin v. Nathan* (1978), 64 Ill. App. 3d 940, 381 N.E.2d 1367, *cert. denied* (1979), 444 U.S. 828, 62 L. Ed. 2d 36, 100 S. Ct. 53, where the court makes the statement that, "[a]fter all, it is clear that at common law an action in tort could be brought against one guilty of maintenance, [citations] and we see no reason why the same rules should not apply to common barratry." (64 Ill. App. 3d 940, 955.) The statement in that case was *dictum*. The authority for that statement is *Fletcher v. Ellis* (Territory of Ark. 1836), 9 F. Cas. 266 (No. 4863a), and *Goodyear Dental Vulcanite Co. v. White* (C.C.S.D.N.Y. 1879), 10 F. Cas. 752 (No. 5602). We find the authority cited in *Nathan* to be unpersuasive and is of course not binding upon this court. With regard to barratry, all the cases and all the legal encyclopedia characterize barratry only as a criminal offense punishable by fine. (See Annot., 139 A.L.R. 620 (1942); 14 Am. Jur. 2d *Champerty & Maintenance* sec. 1 *et seq.* (1964); 14 C.J.S. *Champerty & Maintenance* sec. 3 (1939).) Furthermore, there has been no citation to any case that has awarded damages for barratry. Therefore, given the criminal characterization of barratry and absent any persuasive authority to the contrary, we believe that barratry does not exist in Illinois as a civil cause of action for damages.

Galinski appears to suggest that a cause of action for damages should be implied because the petty offense of barratry accords insufficient relief to him. We believe that any cause of action for barratry for damages would have to be implied from the barratry statute. (See Ill. Rev. Stat. 1983, ch. 13, par. 21.) To imply a cause of action, it is clear that it is not necessary to show a specific legislative intent. If there is no indication that the remedies available are only those the legislature expressed in the Act then where it is consistent with the underlying purpose of the Act and necessary to achieve the aim of the legislation, a private right of action can be implied. (*Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 384 N.E.2d 353; *Sherman v. Field Clinic* (1979), 74 Ill. App. 3d 21, 392 N.E.2d 154.) The court looks to the totality of circumstances in endeavoring to discover legis-

lative intent. *Hoover v. May Department Stores Co.* (1979), 77 Ill. 2d 93, 395 N.E.2d 541.

In the instant case, the policy behind the barratry statute is to prevent the multitude of lawsuits and the intimidation and strife generated by such actions by *punishing* individuals who engage in barratrous conduct. The statute is clear that barratrous conduct is to be treated as a criminal offense. As it was noted before, barratry has always been and still is characterized as criminal in nature.

Although the courts have demonstrated a willingness to imply private causes of action where there exists a clear need to effectuate the purpose of an act (see *Sawyer Realty Group, Inc. v. Jarvis Corp.* (1982), 89 Ill. 2d 379, 432 N.E.2d 849), the judiciary by implying causes of action is assuming policy-making authority, a power more properly exercised by the legislature. The court should exercise such authority with due caution. (See *Cannon v. University of Chicago* (1979), 441 U.S. 677, 60 L. Ed. 2d 560, 99 S. Ct. 1946 (Powell, J., dissenting); *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 384 N.E.2d 353 (Underwood, J., dissenting).) In the case at bar, there is absolutely no indication that the legislature ever intended to allow a cause of action for damages for barratry. Further, we are unable to discern, after over 150 years of not having a cause of action for damages, how the exercise of the court's authority to imply a private cause of action for damages for barratry will clearly effectuate the purpose of the barratry statute.

Accordingly, Illinois has no common law action for barratry seeking damages nor will one be implied. The denial of Kessler's motion to dismiss count I is reversed.

■ In a related matter, defendants Kessler, Briggs and Polisner appeal from the denial of their motion to dismiss count II conspiracy to commit barratry. They contend that absent a finding by this court that common law barratry still exists, then count II is not actionable and must be dismissed.

The law is well settled that the bare allegation of the existence of the conspiracy does not of itself constitute an actionable wrong upon which liability for damages may be found. The conspiracy to commit an act is not actionable at law unless the underlying act itself constitutes wrongful or tortious conduct. (*Bertash Market Co. v. Brown* (1966), 70 Ill. App. 2d 8, 217 N.E.2d 362.) Since we have just determined that no action for common law barratry exists in Illinois, Galinski's count II alleging a conspiracy to commit barratry is not actionable, the denial of the motion to dismiss count II is reversed.

■ Count V charges defendants, Kessler, Briggs and Polisner,

with tortious interference with prospective economic advantage. Count VI charges Kessler and Briggs with conspiracy to tortiously interfere with prospective economic advantage. The trial court dismissed both counts V and VI. Galinski argues that these counts should not have been dismissed since they allege facts sufficient to satisfy the elements of tortious interference with prospective economic advantage. Specifically, Galinski argues that a cause of action for the above tort will still lie where, as in the instant case, the interfering conduct complained of is directed towards the plaintiff as opposed to a third party.

In order to successfully plead an action for interference with prospective economic advantage one must plead: (1) the existence of a valid business relationship or expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach of termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted. (*Parkway Bank & Trust Co. v. City of Darien* (1976), 43 Ill. App. 3d 400, 357 N.E.2d 211.) In *Parkway*, one reason the court dismissed the cause of action for interference with the prospective economic advantage was because "none of the particular acts stated allege that the defendants purposely caused a third person not to enter into or continue with prospective contractual relationship." (43 Ill. App. 3d 400, 403.) Subsequent to *Parkway*, the Federal courts, applying Illinois law, have explicitly stated that the tort of interference with the prospective economic advantage requires action by the defendant towards a third party which results in such interference. See *Laser Industries, Ltd. v. Eder Instrument Co.* (N.D. Ill. 1983), 573 F. Supp. 987; *McIntosh v. Magna Systems, Inc.* (N.D. Ill. 1982), 539 F. Supp. 1185; *DP Service, Inc. v. AM International* (N.D. Ill. 1981), 508 F. Supp. 162.

However, Galinski argues that *Parkway* is not a case that requires the defendant's activities to center on a third party. He asserts that the statement taken from *Parkway* regarding acts directed toward a third party is not a definitive requirement but rather is only a recital of the particular facts in that case and is a statement of how the plaintiff failed to demonstrate that the tort was purposely caused. Additionally, Galinski argues that the string of Federal cases cited in support of what is purportedly held in *Parkway* are all distinguishable. He argues that *McIntosh*, like *Parkway*, focuses on the purpose of the defendant's misconduct and that *Laser* and *DP Service* involve the proposition that one cannot interfere with one's own prospective advantage.

Furthermore, Galinski cites *City of Rock Falls v. Chicago Title & Trust Co.* (1973), 13 Ill. App. 3d 359, 300 N.E.2d 331, for the proposition that courts do not draw artificial distinctions between activities centered on the plaintiff and those centered on third parties. Rather, Galinski argues that the focus of the court should be on the degree of misconduct alleged and the effect it has on the plaintiff's prospective economic advantage.

We are unconvinced by Galinski's argument. We believe that the court in *Parkway* was not merely reciting the particular factual situation of the case, as asserted by Galinski, but rather it was stating the necessary formula in order to overcome a motion to dismiss for failure to state a cause of action. Furthermore, the string of Federal cases, albeit they include various different legal propositions, all explicitly state that the tort of interference with prospective economic advantage requires action by the defendant directed toward a third party. Therefore, this court is in accord with the above propositions as espoused by *Parkway* and the Federal cases that follow.

As further support for his position, Galinski analogizes the instant situation with one involving the interference with contractual relations. Citing Prosser, Torts sec. 129, at 936 (4th ed. 1971), wherein it is stated, "The action has been allowed where it is the plaintiff himself who has been prevented from performing the contract, and so obtaining its benefits, by threats or exclusion from the premises, or even by inducing him to break the contract himself," Galinski maintains that there is no reason to distinguish between interference with contractual relations and interference with prospective economic advantage solely on the basis of whether it was a third party who was induced to break off the relationship or expectancy. Moreover, Galinski argues that the Restatement (Second) of Torts sec. 766B (1979) serves as persuasive authority for the proposition that allegations of interference with the plaintiff, as well as interference with a third party, states a cause of action for interference with prospective economic advantage. Section 766B provides:

> "One who intentionally and improperly interferes with another's prospective contractual relation (except a contract to marry) is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of
>
> (a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or
>
> (b) preventing the other from acquiring or continuing the prospective relation."

Galinski asserts that (b) clearly sets forth the principle that the plaintiff may be the one induced into not seeking the economic advantage. See also *Farmers Cooperative Elevator, Inc. v. State Bank* (Iowa 1975), 236 N.W.2d 674.

■ With regard to Galinski's arguments concerning the analogy between interference with contract and interference with prospective economic advantage and the persuasive authority of the Restatement (Second) of Torts sec. 766B (1979), in light of the clear statement of law as provided in *Parkway* and a series of Federal cases, this court will not extend the tort of interference with prospective economic advantage to include the instant factual situation. Therefore, the trial court properly dismissed count V.

As was related above with regard to barratry and conspiracy to commit barratry, since we have determined that Galinski has failed to allege facts sufficient to maintain count V interference with prospective economic advantage we also conclude that count VI conspiracy to interfere with prospective economic advantage must also fail. Accordingly, the trial court was correct in dismissing count VI.

■ The last issue on appeal involves the trial court's grant of the defendants', Kessler and Levy, motion for summary judgment on count IV interference with contractual relations. Count IV alleged that defendants Kessler and Levy interfered with the contractual relationship between Galinski and a patient of his, Dolores Batie. Specifically, Galinski alleged that he had performed surgery on Batie on April 1981 and that by October 1981 Batie had made some follow-up visits to him and had not yet been released from care. He further alleged that in October 1981 Batie, while still a patient of Galinski, was contacted by Levy, an employee of Kessler, in order to induce her to make an appointment with him. Galinski also alleges that subsequently, Batie did make and keep an appointment to see Dr. Levy.

Prior to a court order on November 1, 1982, to stay discovery, the defendants took a sworn statement of Dolores Batie, on April 22, 1982. Thereafter, this statement was attached to the defendants' motion for summary judgment which was filed with the court and then mailed to the parties on May 4, 1983. In this statement, Batie indicated that she was contacted by Levy in October 1981 but that at that time she was no longer being treated by Dr. Galinski. The trial court concluded that no genuine issue of material fact existed given Batie's statement that she terminated the relationship and thus the trial court granted the defendants' motion for summary judgment.

On appeal, Galinski contends that Batie's statement was at best ambiguous as to whether she was still Galinski's patient at the time

Levy solicited Batie to switch doctors and that accordingly, there existed questions of fact as to whether the defendants interfered with Galinski's contractual relationship with Batie. Alternatively, Galinski contends that Batie's statement was in the nature of a deposition and that Galinski was improperly denied an opportunity to cross-examine the deponent. Furthermore, because this statement was akin to a deposition, transcribed by a court reporter, and it did not contain Batie's signature nor waiver of signature as required by statute, Galinski contends that it should not have been considered by the court.

The elements of the tort of interference with contractual relations are set forth in *Belden Corp. v. InterNorth, Inc.* (1980), 90 Ill. App. 3d 547, 413 N.E.2d 98. These elements include: (1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of this contractual relation; (3) the defendant's intentional and unjustified inducement of a breach of a contract; (4) a subsequent breach by the other, caused by the defendant's wrongful conduct; and (5) damages. Unlike the right to receive the benefits of a contract, the right to engage in a business relationship is not absolute, and must be exercised with regard to the rights of others. The rights of others most commonly take the form of lawful competition, which constitutes a privileged interference with another's business. 90 Ill. App. 3d 547, 552.

A discussion of what constitutes lawful competition in the area of interference with business relationships can be found in the Restatement (Second) of Torts sec. 768 (1979). Therein it is stated:

"(1) One who intentionally causes a third person not to enter into a prospective contractual relation with another who is his competitor or not to continue an existing contract terminable at will does not interfere improperly with the other's relation if

(a) the relation concerns a matter involved in the competition between the actor and the other and

(b) the actor does not employ wrongful means and

(c) his action does not create or continue in an unlawful restraint of trade and

(d) his purpose is at least in part to advance his interest in competing with the other."

It is further provided in the Restatement (Second) of Torts sec. 768, comment i (1979), that:

"If the third person is free to terminate his contractual relation with the plaintiff when he chooses, there is still a subsisting contract relation; but any interference with it that induces its termination is primarily an interference with the future relation

between the parties, and that plaintiff has no legal assurance of them. As for the future hopes he has no legal right but only an expectancy; and when the contract is terminated by the choice of the third person there is no breach of it. The competitor is therefore free, for his own competitive advantage, to obtain the future benefits for himself by causing the termination."

As was noted in *Belden,* as the degree of enforceability of a business relationship decreases, the extent of permissible interference by an outsider increases. *Belden Corp. v. InterNorth, Inc.* (1980), 90 Ill. App. 3d 547, 552.

 In the instant case, the trial court correctly recognized that the physician-client relationship was a relationship terminable at will and that Galinski did not have any long-term contractual rights to treat Batie. As was stated in *Belden* and the Restatement (Second) of Torts, with a relationship terminable at will, lawful competition serves as privileged interference. Therefore, since we are dealing with the relationship terminable at will, the critical focus is on whether the defendants' interference can be considered lawful competition, and not, as asserted by Galinski, whether the interference happened before the termination.

 The facts as provided in Batie's statement appeared to indicate that she terminated her relationship with Dr. Galinski before Levy contacted her. However, even if we find otherwise, the defendants' actions as alleged by Galinski, fall within the range of lawful competition as outlined by section 768 of the Restatement (Second) of Torts. These actions did not create any unlawful restraint of trade nor were they executed through any improper means (fraud, deceit, misrepresentation, coercion). Rather, the defendants' actions were well within the legitimate interest of a doctor competing for business. Therefore, the trial court was correct in granting the defendants' motion for summary judgment.

With regard to Galinski's alternative argument, we conclude that the trial court properly considered Batie's sworn statement as an affidavit.

 Supreme Court Rule 191(a) (87 Ill. 2d R. 191(a)) governs the sufficiency of affidavits offered in support of a motion for summary judgment and provides, in pertinent part, that:

"Affidavits in support of or in opposition to a motion for summary judgment *** shall be made on the personal knowledge of the affiants; *** shall not consist of conclusions but of facts admissible in evidence; and shall affirmatively show that the affiant, if sworn as a witness, can testify competently thereto."

Batie's statement conforms to the above statute in every respect. Even if the sworn statement could be considered to contain minor technical deficiencies, substance, and not form, controls. (See *Mount Prospect State Bank v. Forestry Recycling Sawmill* (1980), 93 Ill. App. 3d 448, 417 N.E.2d 621.) Moreover, as noted by the trial court, Galinski had ample opportunity, over nine months, to ask for leave to lift the stay on discovery, to take her statement or to take her deposition. Therefore, Galinski's arguments have no merit, and we affirm the trial court's grant of the defendant's motion for summary judgment on count IV.

Based on the foregoing, the orders of the trial court are reversed as to counts I and II and affirmed as to counts IV, V and VI.

Affirmed in part, reversed in part.

JOHNSON and LINN, JJ., concur.