**Julie ZAKUTANSKY, Plaintiff,**

**v.**

**BIONETICS CORP., et al., Defendants.**

**No. 92 C 2002.**

United States District Court,
N.D. Illinois, E.D.

Nov. 5, 1992.

This Court rarely refers motions to dismiss under Fed.R.Civ.P. ("Rule") 12 or motions for summary judgment under Rule 56 to magistrate judges.[1] Accordingly it has obtained and reviewed the parties' memoranda to determine whether there is any need for the intervention of two levels of judicial consideration as to the sufficiency of the First Amended Complaint (the "Complaint") filed by Julie Zakutansky ("Zakutansky"). There is not, and this opinion will deal with the issues in comparatively brief compass.[2] It will eschew any detailed rehearsal of Zakutansky's allegations, instead turning directly to defendants' arguments.

Elaine K.B. Siegel, Chicago, Ill., for plaintiff.

Marilyn F. Longwell and Peter L. Albrecht, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

This action has been reassigned to this Court's calendar from that of its former colleague Honorable Ilana Rovner (now elevated to our Court of Appeals). Before the reassignment Judge Rovner had referred two motions to dismiss to Magistrate Judge Edward Bobrick for decision—one motion filed by defendants Bionetics Corporation ("Bionetics") and Dr. John Parks ("Parks"), represented by one law firm, and the other filed by defendants Muhammad Rafique ("Rafique") and William Sabato ("Sabato"), represented by another. Both motions have become fully briefed and are ripe for decision.

*Pleading Matters*

 One way in which Bionetics–Parks take issue with the Complaint is by challenging its inclusion of some allegations "on information and belief." According to defendants (principally citing the opinion of another of this Court's colleagues, Honorable George Lindberg, in *Gallagher v. Kopera*, 789 F.Supp. 277, 278 (N.D.Ill.1992)), that form of pleading violates Rule 11.

Stated as an ironclad principle, that really makes no sense at all.[3] Rule 11's mandate of prefiling inquiry has not altered the obvious truth that some matters are inherently within the knowledge of defendants rather than plaintiffs. And even apart from facts of that nature, there may be perfectly good reasons to support the filing of a lawsuit based on information rather than buttoned-down knowledge. Indeed, if a plaintiff has alleged something on information and belief that could have been learned by prefiling inquiry and that

1. There is a wide variation among the judges on this District Court in terms of the nature and scope of their utilization of the services of magistrate judges. No particular practice in that respect is "right" or "wrong," of course—it is really a matter of personal style and of the judges' individual perceptions as to the optimum way to utilize the time and talents of the high-quality judicial officers who occupy the magistrate judge positions in this district.

2. "Comparatively brief" is obviously a relative term, in this instance appropriate because of the bulk of the parties' submissions.

3. With all respect, what might be read as a total rejection of "information and belief" pleading in *Gallagher* would carry the concept set out in *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683–84 (7th Cir.1992) too far. *Bankers Trust* announced its disapproval of such pleading only in the context of allegations of fraud (as to which particularity is specially mandated by Rule 9(b)) and of other allegations that were a matter of public record. Thus *Bankers Trust* does not at all undercut the common sense approach taken in this opinion.

proves to be *true* in fact, no defendant can complain—and if it turns out that the allegation is *false*, that does not impair the validity of the pleading (remember that the allegations of the Complaint must be accepted as true for Rule 12(b)(6) purposes)—though it might under some circumstances subject plaintiff or plaintiff's counsel or both to sanctions under Rule 11.

Somewhat relatedly, Bionetics–Parks R.Mem. 1 & n. 1 also criticize Zakutansky for having advanced some added facts in her own responsive Memorandum rather than in the Complaint (citing in support of that proposition *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984) [4]). It is of course true that a Rule 12(b)(6) motion must be tested against the complaint itself, and not with reference to matters extraneous to the pleading. But the applicable standard is a generous one, as stated in *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984):

> At this stage of the litigation, we must accept petitioner's allegations as true. A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.

That is the measure that this opinion will apply.[5]

---

**4.** This Court has more than a passing familiarity with *Car Carriers.* That case was an affirmance of this Court's opinion reported at 561 F.Supp. 885 (N.D.Ill.1983), where this Court adverted to plaintiff's later-adduced factual assertions—even though set out in a memorandum—to demonstrate that there was no purpose to be gained by merely dismissing the existing complaint and granting plaintiff leave to replead. For that reason this Court dismissed not only the complaint but the action itself, and our Court of Appeals affirmed.

**5.** This Court will *not* of course determine the truth or lack of truth in any of the Complaint's allegations. In that respect it is ironic that Bionetics–Parks R.Mem. 3 seeks to have this Court dismiss one of the Complaint's allegations on the ground that the EEOC's determination (attached as an exhibit to the Complaint) was adverse to Zakutansky. Counsel for Bionetics–Parks, an experienced labor law firm, are of course aware that even a prior formal arbitration award is not determinative in a Title VII case, which must be considered by the federal

*Count I*

■ Zakutansky sues three of the four defendants—Bionetics, Sabato and Parks—in Count I for alleged sexual harassment. On that score the law in this Circuit is well set out in *Daniels v. Essex Group, Inc.*, 937 F.2d 1264, 1270–71 (7th Cir.1991) and *Brooms v. Regal Tube Co.*, 881 F.2d 412, 418–19 (7th Cir.1989) (taking their cue, of course, from *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65–67, 106 S.Ct. 2399, 2404–06, 91 L.Ed.2d 49 (1986)). Bionetics–Parks R.Mem. 4–5 improperly urges this Court to make a ruling of insufficiency of the Complaint's allegations as a matter of law.[6]

One respect in which Bionetics–Parks do have the better of it, however, has to do with the applicability of the Civil Rights Act of 1991 to Zakutansky's Title VII claims (as advanced in Counts I and V), which would bring into the case a jury trial and claims for compensatory and punitive damages. In that respect our Court of Appeals has not yet spoken expressly to the situation here—one in which the charged conduct preceded the effective date of the 1991 Act, but the suit was filed after that effective date. However, the strong signal from *Luddington v. Indiana Bell Telephone Co.*, 966 F.2d 225 (7th Cir. 1992) is that the timing of the assertedly

---

court de novo (*Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974)). A fortiori no reason appears to call for dispositive weight to be given to an *agency's* determination as to probable cause or lack of it, after an investigation where the interested parties are typically unrepresented by counsel, where no rules of evidence apply and where other relevant procedural safeguards are lacking.

**6.** Another of the empty arguments advanced at Bionetics–Parks Mem. 5 n. 4 cavils at the Complaint's failure to refer to quid pro quo sexual harassment. It has long been true, though all too frequently not understood by counsel, that legal theories are not a necessary part of a pleading. By chance our Court of Appeals has issued two opinions on the very same day last month, by different judges for different panels, that have vigorously reaffirmed that principle: *NAACP v. American Family Mut. Ins. Co.*, 978 F.2d 287, 292–93, (7th Cir.1992) and *Tolle v. Carroll Touch, Inc.*, 977 F.2d 1129, 1137 (7th Cir.1992).

discriminatory *conduct,* and not the date when suit was filed, is the determinative date. As have most (if not all) of its colleagues who have written on the subject, this Court grants the motion to dismiss those aspects of Zakutansky's prayer for relief, obviously without prejudice to their reinstatement if before trial our Court of Appeals (or of course the Supreme Court) were to announce a different rule.

That ruling also leads to another partial rejection of the Count I claim. Title VII liability runs against "employers," a principle reconfirmed by the nature of the relief that it affords. Where as here Zakutansky's termination took the form of Parks' acceptance of her resignation, the fact that Sabato was not a decisionmaker as to any possible termination of her employment (either at Bionetics' instance or in accepting her resignation) calls for his dismissal as a Count I defendant. At least for the present, however, Parks will remain as a defendant in Count I, but only in his individual capacity (not in his "official" capacity, which is purely duplicative of Bionetics' presence in the case).[7]

### Count V

■ As already indicated, Count V also looks to Title VII for Zakutansky's source of relief. In that Count she claims that defendants retaliated against her for having engaged in protected activity—in this instance for having complained about the alleged sexual harassment to which she was subjected. Because the same three defendants (Bionetics, Sabato and Parks) are targeted in Count V, the just-completed discussion as to the proper parties under Count I would apply here with equal force if Count V survived at all.

But Zakutansky faces a more basic hurdle on her retaliation claim: the untimeliness of its assertion. This is not the flaw that has been urged at Bionetics–Parks R.Mem. 6, where those defendants have again invoked *Car Carriers* to say that

Zakutansky has improperly defended against an untimeliness charge by attaching to her responsive memorandum (and not the Complaint) a copy of her EEOC charge that included such a retaliation claim. In that respect counsel for Bionetics–Parks would turn the operative principles on their head. Among the allegations that Zakutansky incorporates into Count V by reference, Complaint ¶ 70 adverts to the claimed retaliation and Complaint ¶ 72 alleges compliance with the administrative precondition of EEOC filing, and that is enough for pleading purposes. Thus instead of a proper Rule 12(b)(6) motion attacking the Complaint's sufficiency, Bionetics–Parks have really advanced an affirmative defense (something that, of course, need not be negated by the original Complaint).

Instead Zakutansky's timeliness problem is a different one: the failure to have brought her retaliation claim to this Court within 90 days after issuance of the EEOC's right-to-sue letter. Retaliatory discharge is a discrete claim, quite separate from that of the underlying discriminatory conduct (see, e.g., *Steffen v. Meridian Life Ins. Co.,* 859 F.2d 534, 545 (7th Cir.1988) and cases cited there; *Sherman v. Standard Rate Data Service, Inc.,* 709 F.Supp. 1433, 1442 (N.D.Ill.1989)). What must be examined, then, is the sequence of events that preceded Zakutansky's initial assertion of that claim in her First Amended Complaint filed July 2, 1992.

Zakutansky's EEOC charge asserted her belief that she had been discriminated against in these respects (quoted verbatim):

1. I have been sexually harassed;

2. My employer condoned the harassment;

3. My employer retaliated against me for resisting the harassment;

4. I was forced to resign and constructively discharged due to the harassment; and

---

7. Even Parks' continuing presence as a Count I defendant in his individual capacity is dubious. About the only purpose that it might serve would be to deal with the contingency that

Bionetics could prove financially incapable of satisfying Zakutansky's entitlement on that claim.

5. I was improperly denied a pay increase.

That brief use of the word "retaliated" might arguably have put Bionetics (and perhaps Parks and Sabato as well) on notice of a potential claim of the type that Zakutansky now advances in Count V. And under the principles of such cases as *Donnelly v. Yellow Freight System, Inc.*, 874 F.2d 402, 410 (7th Cir.1989) and *Paskuly v. Marshall Field & Co.*, 646 F.2d 1210, 1211 (7th Cir.1981) (per curiam), that on-notice condition might have been sufficient to sustain a timely complaint based on that charge, even though the EEOC's right-to-sue letter made no specific reference to retaliation (as was true here).

But Zakutansky's problem is that her initial Complaint in this action, which was filed within the required 90–day time frame after EEOC's right-to-sue letter, contained no hint of a retaliation claim at all. Instead it charged Bionetics and its people with failing to give heed to Zakutansky's complaints about sexual harassment, but it said *nothing* to suggest that she was then the victim of a retaliatory discharge. That discrete claim was first advanced more than six months after the receipt of the right-to-sue letter. Neither *Donnelly* nor *Paskuly* calls for relation back of the claim, under the authority of Rule 15(c), to the original filing date of this lawsuit. Accordingly Count V is indeed out of time. It is dismissed.

### Count II

■ Zakutansky's Count II charges each of the individual defendants with intentional interference with her business relationship (her employment) with Bionetics. In response to the argument that one of the essential elements of that cause of action—the actual termination of the relationship—is lacking, Zakutansky says that the necessary ingredient is equally provided by an employee's saying "I quit" as by the employer saying "You're fired"—that a factfinder could rationally decide that the "voluntary" termination was really a product of the employer's imposition of intolerable working conditions.

That argument would have force in support of a claim such as one for retaliatory termination of employment. But what Zakutansky misses in making that argument to sustain Count II is that the nature of her claim does not mesh with the Illinois-defined ingredients for such a cause of action as set out in such cases as *Galinski v. Kessler*, 134 Ill.App.3d 602, 607–08, 89 Ill. Dec. 433, 437, 480 N.E.2d 1176, 1180 (1st Dist.1985). Overriding vigorous arguments to the contrary, *Galinski* expressly confirmed "that the tort of interference with the prospective economic advantage requires action by the defendant towards a third party which results in such interference," that the explicit meaning of that requirement is "that [it] requires the defendant's activities to center on a third party," and that the requirement is part of "the necessary formula in order to overcome a motion to dismiss for failure to state a cause of action." In stark contrast, here all the actions that are attributed to the three individual defendants targeted Zakutansky herself and *not* Bionetics. Nothing suggests that *Bionetics* made a move toward terminating the employment relationship, and it is in *that* sense that the distinction between "I quit" and "You're fired" has significance in this case.

It is unnecessary to address such other arguments advanced by defendants as the possible preemption of an intentional-interference claim and the possible existence of a privilege protecting the individual defendants' actions. Count II is dismissed for want of an essential ingredient.

### Counts III and IV

■ Zakutansky's Count III (brought against Rafique and Sabato) and Count IV (brought against Bionetics) charge those defendants with the intentional infliction of emotional distress. As their first line of defense against those claims, the targets of both claims point to the holding in *Juarez v. Ameritech Mobile Communications, Inc.*, 957 F.2d 317, 323 (7th Cir.1992) that any such claim (there asserted only against an employer) is foreclosed by the exclusivi-

ty of the Illinois Workers Compensation Act.

But it is fundamental that the definition of Illinois state law is to be found in what the *Illinois* courts say, not in what the federal courts (however prestigious) say that it is. And in this instance the recent opinion in *Juarez* is at least partially at odds with the Illinois Supreme Court's prior decision in *Meerbrey v. Marshall Field & Co.*, 139 Ill.2d 455, 463, 151 Ill.Dec. 560, 564, 564 N.E.2d 1222, 1226 (1990) (surprisingly not cited, let alone discussed, in *Juarez*) and with the even more recent and directly relevant decision in *Fitzgerald v. Pratt*, 223 Ill.App.3d 785, 786–89, 166 Ill. Dec. 200, 202–03, 585 N.E.2d 1222, 1224–25 (5th Dist.1992).[8]

It is unnecessary to rehearse the plain teaching of *Meerbrey, Fitzgerald* and *Johnson* (see n. 8 as to the latter). In summary those cases unequivocally reject any notion that the Workers Compensation Act preempts either (1) a claim for severe emotional distress against Rafique and Sabato[9] or (2) a like claim brought against Bionetics that rests on the premise of Bionetics' *intentional* (as contrasted with merely respondeat-superior-ascribed) conduct. Because Complaint ¶ 86(a) sounds in that concept of Bionetics' intentional infliction of such distress,[10] both it and Count IV survive. But the alternative that is ad-

vanced in Complaint ¶ 86(b) (a pure respondeat superior allegation) is stricken, and the same action is taken as to the alternative set out in Complaint ¶ 86(c), with its highly attenuated causal connection.

■ Defendants also assert a second threshold defense, one that claims preemption of the intentional-infliction cause of action by the Illinois Human Rights Act, Ill.Rev.Stat. ch. 68, ¶ 2–102(D). To that end defendants seek to rely on *Anderson v. Pistner*, 148 Ill.App.3d 616, 618–20, 102 Ill.Dec. 9, 11–12, 499 N.E.2d 566, 568–69 (1st Dist.1986) (where an age discrimination claim was at issue). But on that score too Zakutansky has the better of it by far, for both *Pavilon v. Kaferly*, 204 Ill.App.3d 235, 241–44, 149 Ill.Dec. 549, 553–54, 561 N.E.2d 1245, 1249–50 (1st Dist.1990) and the earlier decision in *Ritzheimer v. Insurance Counselors, Inc.*, 173 Ill.App.3d 953, 962–64, 123 Ill.Dec. 506, 513–14, 527 N.E.2d 1281, 1288–89 (5th Dist.1988) come much closer to the mark than *Anderson*. No such Human Rights Act preemption bars the claims here.

Once the Count III and Count IV claims have thus survived defendants' initial conceptual attacks, the inquiry shifts to whether the conduct ascribed to defendants in those counts meets the outrageous level demanded by such cases as *McGrath v. Fahey*, 126 Ill.2d 78, 127 Ill.Dec. 724, 533

---

**8.** Anyone unfamiliar with this Court's opinions dealing with the significance of the fact that the voice in *Fitzgerald* is that of an Illinois Appellate Court, and not that of the Illinois Supreme Court, is referred to *Rizzo v. Means Services, Inc.*, 632 F.Supp. 1115, 1131–33 (N.D.Ill.1986) and the *Abbott Laboratories v. Granite State Ins. Co.*, 573 F.Supp. 193 (D.C.Ill.1983) decision cited there. As pointed out in those cases and in a number of this Court's other opinions, an integral part of Illinois substantive law (what this Court has termed the *"Thorpe–Garcia* rule") is the principle that every Illinois trial court is bound by the opinions in every Illinois Appellate District (where there is a split of authority among districts, the Appellate District in which the trial court is located takes precedence). Hence this Court considers that the role of the federal court under *Erie v. Tompkins* is to follow *that* precept of Illinois law (as well as Illinois' substantive rules), rather than attempting to predict whether the Illinois Supreme Court would or would not follow such a recent Illinois Appellate Court decision (the usual *Erie*

*v. Tompkins* inquiry absent the *Thorpe–Garcia* rule). But in this instance that sometimes troublesome problem does not appear to be presented, both because the Illinois Supreme Court's *Meerbrey* decision delivers essentially the same message as *Fitzgerald* and because the First District has also ruled the same way in *Johnson v. Federal Reserve Bank of Chicago*, 199 Ill.App.3d 427, 432–34, 145 Ill.Dec. 558, 561–62, 557 N.E.2d 328, 331–32 (1st Dist.1990).

**9.** Those defendants' effort to rely on *Juarez* is simply irresponsible in light of (1) its exclusive attention to a suit brought against the *employer* (not one launched against the offending employee) and (2) the square Illinois precedent that has flatly turned down the contention advanced by Rafique and Sabato that such suits against *employees* are preempted.

**10.** It is worth repeating that this opinion neither finds nor implies that Zakutansky will be able to *prove* what she has *alleged* on that score.

N.E.2d 806 (1988). Anyone who reads the cases that the parties have cited (*McGrath, Johnson*, 199 Ill.App.3d at 430–33, 145 Ill. Dec. at 560–61, 557 N.E.2d at 330–31 and *Milton v. Illinois Bell Tel. Co.*, 101 Ill. App.3d 75, 79, 56 Ill.Dec. 497, 500, 427 N.E.2d 829, 832 (1st Dist.1981) on Zakutansky's behalf, as against *Miller v. Equitable Life Assurance Soc'y of the United States*, 181 Ill.App.3d 954, 130 Ill.Dec. 558, 537 N.E.2d 887 (1st Dist.1989) on defendants') has to conclude that those cases look in totally different directions. It is extraordinarily difficult, if not impossible, to distinguish the rejection of the cause of action in *Miller* from its express acceptance in the other three cases. Under those circumstances this Court will *not* dispatch Zakutansky's claims at the pleading stage. Of course it remains to be seen whether the facts, as they become fleshed out, will support those claims.

One last point must be dealt with. With Count I having survived against Bionetics and only marginally against Parks, and with Counts II and V having gone by the boards, the question of preservation of any state law claim against Rafique and Sabato in this federal court requires brief attention. In that respect, what was formerly the problematic concept of "pendent party jurisdiction" has now been supplanted by the "supplemental jurisdiction" enactment of 28 U.S.C. § 1367, under which this Court is granted such jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." That is certainly an apt description of both Counts III and IV, thus confirming the appropriateness of retaining those claims.

### Conclusion

When all of the parties' multifarious arguments are sorted out, two of Zakutansky's claims—those advanced in Counts II and V—must be and are dismissed. This Court also dismisses Sabato as a Count I defendant and dispatches from that count Zakutansky's prayers for remedies that would have been available only under the Civil Rights Act of 1991. Finally in terms of the flawed portions of Zakutansky's pleading, Complaint ¶¶ 86(b) and (c) are stricken.

In all other respects the Complaint stands. All defendants are ordered to file their answers to the surviving portions of the Complaint on or before November 19, 1992. And given that requirement, the previously-set November 10, 1992 status hearing is vacated and the status hearing is rescheduled to 9 a.m. December 2, 1992.