ELSIE FROEHLICH, Plaintiff-Appellee, *v.* J. R. FROEHLICH MANUFACTURING COMPANY, Defendant.—(RICHARD FROEHLICH, Defendant-Appellant.)

First District (5th Division)    No. 79-2016

Opinion filed January 30, 1981.

Charles Kraut, of Charles Kraut, Ltd., and Alfred B. Teton, both of Chicago, for appellant.

Emanuel Gordon, of Chicago, for appellee.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

Defendant, Richard Froehlich, appeals from a judgment of personal liability entered against him for an indebtedness of J. R. Froehlich Manufacturing Company (the corporation). On appeal, he contends that (1) the corporation, of which he was the principal officer and shareholder, was not an enterprise subject to the Uniform Commercial Code—Bulk

Transfers; (2) he was not personally liable for the omission of plaintiff's name from the bulk transfer affidavit listing of the corporation's creditors; (3) he did not violate the Illinois Business Corporation Act (Corporation Act) and was not the alter ego of the corporation; and (4) the trial court lacked jurisdiction under section 73 of the Civil Practice Act and Supreme Court Rule 277 to impose personal liability on him through supplementary citation proceedings.

It appears from the record that defendant was the principal officer and shareholder of the corporation, which for many years had been engaged in the production of custom fixtures. In January 1977, the corporation sold all of its assets to Waldbillig Woodworking, Inc. (Waldbillig), for $226,700, of which $106,700 was payable in monthly installments of $1,294.58. Pursuant to the sales agreement, defendant executed a bulk transfer affidavit but omitted plaintiff's name from the list of the corporation's creditors. The funds received from the sale were deposited in the corporation's bank account and used to discharge debts, liens, and taxes of the corporation.

In December of 1977, plaintiff confessed judgment on a note for $25,000 given by the corporation to plaintiff, and judgment was entered for $32,872.50. Then, on plaintiff's petition, the trial court ordered defendant to endorse Waldbillig's monthly checks to plaintiff's attorney, and subsequently the monthly installments were ordered to be paid directly to plaintiff. Those orders are not contested in the instant appeal.

Plaintiff also petitioned the trial court to pierce the corporate entity of the corporation and to enter judgment for $32,872.50 against defendant based upon his actions as an officer and director of the corporation. In support thereof, she alleged that defendant received the Waldbillig monthly checks payable to the corporation; that the checks were utilized by defendant as he deemed fit as principal officer and shareholder; that defendant signed all checks of the corporation, as well as the documents pertaining to the sale of the corporation's assets to Waldbillig, including the bulk transfer affidavit; and that defendant also determined all business policies of and controlled and operated the corporation in such a manner as to be accountable solely to himself.

Plaintiff maintained initially that defendant was in violation of the Business Corporation Act, but in response to the corporation's answer in plaintiff's action against it, she modified her position, asserting that defendant's liability was predicated upon Illinois case law. In this regard, she argues that defendant was personally liable for failure to include her name in the bulk transfer affidavit, and that she had just reason to believe defendant had assets of the corporation to which she as a judgment creditor was entitled through supplementary citation proceedings under section 73 of the Civil Practice Act and Supreme Court Rule 277.

Defendant's answer admitted the omission of plaintiff's name from the bulk transfer affidavit but denied the applicability of the bulk transfers article to the sale of the corporation and, further, denied that personal liability could attach for violation of that act or the Business Corporation Act or that he was the alter ego of the corporation. Defendant also challenged the jurisdiction of the trial court in the supplementary citation proceedings. He alleged that the corporation was operated as a separate and distinct entity; that he did not commingle corporate funds with his own; that he was not indebted to the corporation; and that he had none of its assets.

The trial court entered judgment on the pleadings and supporting documents, finding defendant's failure to include plaintiff's name among the corporate creditors to be in violation of the bulk transfers article and the Business Corporation Act, which rendered him personally liable to plaintiff for the indebtedness of the corporation. The court also entered judgment against defendant in the supplementary proceedings. The amount of the judgment was determined to be $21,221.28, which was $11,651.22 less than the judgment entered against the corporation because in the interim a number of monthly payments had been received by plaintiff from Waldbillig—thereby reducing the unpaid balance of that judgment.

OPINION

We turn first to the question of the trial court's finding defendant personally liable for violation of the Illinois Business Corporation Act (Ill. Rev. Stat. 1977, ch. 32, par. 157.1 *et seq.*) and of Illinois case law concerning the required formalities of distinctness between a corporation and its principal officers and shareholders. Plaintiff in essence bases her contention on several factors relating to the degree of control defendant exercised over the corporation. Defendant maintains that those indicia are not grounds for disregarding the separate identity of the corporation and that the proper test is not the concentration of power but, rather, whether the financial affairs and accounts of a corporation and those who control it are mingled so as to prejudice creditors or whether corporate funds are diverted to personal use. Plaintiff's theory as alleged is governed solely by Illinois case law so that resolution of this issue must rest thereon.

■■ The general rule that a corporation is presumed to be separate and distinct from its shareholders (*Sabath v. Mansfield* (1978), 60 Ill. App. 3d 1008, 377 N.E.2d 161; *Stevenson v. ITT Harper, Inc.* (1977), 51 Ill. App. 3d 568, 366 N.E.2d 561; *Bevelheimer v. Gierach* (1975), 33 Ill. App. 3d 988, 339 N.E.2d 299) is subject to the broad exception that separate identity may be disregarded in situations in which it would otherwise pose an obstacle to protection or enforcement of private or public rights (*Bevel-*

*heimer v. Gierach; Flight Kitchen, Inc. v. Chicago Seven-Up Bottling Co.* (1974), 22 Ill. App. 3d 558, 317 N.E.2d 663). However, that exception should not be applied except when clearly justified by the circumstances presented in each case. See *B. W. Sales Co. v. Industrial Com.* (1966), 35 Ill. 2d 418, 220 N.E.2d 405; *Flight Kitchen, Inc. v. Chicago Seven-Up Bottling Co.; Boatman v. Jordan* (1968), 102 Ill. App. 2d 55, 243 N.E.2d 644.

■■ One well-established set of circumstances in which the separate identity of the corporation will not be recognized occurs when the corporation functions as the so-called alter ego of the shareholder; that is, when the corporate directors or officers have such unity of interest or ownership that the individual and corporation are, for all practical purposes, coextensive. To adhere to the fiction of corporateness in that context cannot be countenanced, as it would sanction a fraud or promote injustice. *People ex rel. Scott v. Pintozzi* (1971), 50 Ill. 2d 115, 277 N.E.2d 844; *Federal Insurance Co. v. Maritime Shipping Agencies, Inc.* (1978), 64 Ill. App. 3d 19, 380 N.E.2d 873.

However, cases in which the doctrine of the alter ego was applied so as to dispel the fiction of corporateness are readily distinguishable from the case at bar. In *People ex rel. Scott v. Pintozzi*, defendants were found to be the real parties in interest rather than the corporation against which taxes were assessed. They exercised ownership, direction, and control over the corporations that they formed and the liquor stores they operated which were used as a business device so as to collect taxes from customers without remitting what was due the State. Finding the corporations to be the alter egos of defendants, the court ordered that the corporate identities be ignored and personal liability imposed on defendants for the taxes due. Similarly, in *Sears v. Weissman* (1972), 6 Ill. App. 3d 827, 286 N.E.2d 777, defendants had stripped their corporation of nearly all its capital prior to dealing with plaintiff. Then, after depositing plaintiff's funds in the corporate bank account, defendants took additional funds from the account, including an amount for a purported loan to another corporation which they jointly owned. The court determined that defendants used plaintiff's funds for their personal benefit and held that plaintiff, a creditor of the corporation, was entitled to a judgment against the defendants personally. In *State Bank v. Benton* (1974), 22 Ill. App. 3d 1007, 317 N.E.2d 578, defendant was found to be the alter ego of a corporation and held personally liable for payment of corporate indebtedness. He was the owner of 249 of 250 shares of stock, was the only person authorized to sign agreements for the corporation and, significantly, had used the corporate entity for personal benefit to the exclusion of creditors by transferring corporate funds to himself as repayment of funds advanced by him. Finally, in *Federal Insurance Co. v. Maritime*

*Shipping Agencies, Inc.*, defendants had formed a second corporation in order to carry on the same business of the bankrupt principal corporation to avoid harassment by its creditors. The court held that the distinction between the two corporate entities should not be recognized and treated them as one.

■■ In the case before us, we believe that the showing as to defendant's control is insufficient to support the application of the alter ego theory. Despite the extensive authority defendant enjoyed, no showing was made that his personal interests or ownership of property coincided with the assets of the corporation. While defendant disposed of checks payable to the corporation as he deemed fit, there is no indication that he used such checks for his own purposes. Neither has it been shown that he was personally indebted to the corporation or that he owned any of its assets, and it seems clear that recognition of corporateness would not sanction fraud or promote injustice. Accordingly, we find that defendant was not the alter ego of the corporation and consequently is not personally liable to plaintiff for the judgment originally imposed on the corporation.

With respect to the question of his liability under the bulk transfers article, defendant contends that contrary to the finding of the trial court, section 6—104(3) of the Uniform Commercial Code does not provide for personal liability for the omission, inadvertent or otherwise, of a creditor's name from the bulk transfer affidavit. Such responsibility, defendant argues, rests with the transferor, which in the instant transaction is the corporation.

Article 6—104(3) of the Uniform Commerical Code provides:

> "Responsibility for the completeness and accuracy of the list of creditors rests on the transferor, and the transfer is not rendered ineffective by errors or omissions therein unless the transferee is shown to have had knowledge." (Ill. Rev. Stat. 1977, ch. 26, par. 6—104(3).)

Construction of this provision rests upon a determination of which party is the transferor, and in this respect we note that no provision of the bulk transfers article affords recourse to a creditor omitted from the bulk transfer affidavit executed pursuant to section 6—104 as against the principal officer and shareholder of a corporation. Therefore, no other party except the transferor or the transferee "shown to have had knowledge" can be held accountable for the contents of the list of creditors.

■■ Having found in the instant case that defendant is not the alter ego of the corporation and thus is distinct from it for purposes of liability, it follows that he cannot be regarded as the transferor of the corporation's assets. Because we have maintained the separateness of the corporation, it (and not defendant) is the actual transferor. Moreover, plaintiff has availed herself of the remedy flowing from the judgment against the

corporation and has received monthly installments from Waldbillig, as the transferee of the corporation's assets. Plaintiff has thereby reduced her claim by more than $11,000 from the date she received an assignment of the note to the date, only a few months later, of the trial court's judgment. Such remedy is contemplated by the bulk transfers act. In particular, the courts may seek remedies outside of the act (*Pastimes Publishing Co. v. Advertising Displays* (1972), 6 Ill. App. 3d 414, 286 N.E.2d 19), including that which cures a defective affidavit simply by making payments to unpaid creditors. (See Ill. Ann. Stat., ch. 26, par. 6—104, Uniform Commercial Code Comment 2, at 642 (Smith-Hurd 1963)). Assignment of the Waldbillig note appears to afford plaintiff a satisfactory remedy, and plaintiff has not claimed that remedy to be insufficient. For those reasons, we hold that personal liability does not attach to defendant for the omission of plaintiff from the list of creditors.

Finally, we consider defendant's contention that the trial court lacked jurisdiction to enter judgment against him in supplementary citation proceedings which plaintiff initiated pursuant to section 73 of the Civil Practice Act and Supreme Court Rule 277. Plaintiff maintains that because of defendant's extensive control over the corporation, she has reason to believe defendant has property or income of the corporation which she as the judgment creditor is entitled to reach and apply against the judgment rendered in her favor. Defendant argues, on the other hand, that there is no indication in the record of his personally holding any corporate assets, and the fact that defendant managed the corporation is of itself insufficient to support the belief that he had any of its property or income.

Section 73 of the Civil Practice Act provides in relevant part:

"(1) A judgment creditor * * * is entitled to prosecute supplementary proceedings for the purposes of examining the judgment debtor or any other person to discover assets or income of the debtor not exempt from execution, a deduction order or garnishment, and of compelling the application of non-exempt assets or income discovered toward the payment of the amount due under the judgment. * * *

(2) When assets or income of the judgment debtor not exempt from execution, a deduction order or garnishment are discovered, the court may, by appropriate order or judgment:

* * *

(c) Compel any person cited, other than the judgment debtor, to deliver up any assets so discovered, to be applied in satisfaction of the judgment, in whole or in part, when those assets are held under such circumstances that in an action by the judgment debtor he could recover them in

specie or obtain a judgment for the proceeds or value thereof as for conversion or embezzlement." Ill. Rev. Stat. 1977, ch. 110, par. 73(1), (2)(c).

Supreme Court Rule 277(a), which implements section 73, provides in relevant part:

"A supplementary proceeding authorized by Section 73 of the Civil Practice Act may be commenced at any time with respect to a judgment upon which execution may issue. The proceeding may be against the judgment debtor or any third party the judgment creditor believes has property of or is indebted to the judgment debtor." Ill. Rev. Stat. 1979, ch. 110A, par. 277.

Together these provisions create a comprehensive framework for discovery of assets through supplementary proceedings. In particular, subsection 2 of section 73 gives the courts broad powers to compel, in a summary manner, the application of discovered assets or income to the satisfaction of a judgment. (Ill. Ann. Stat., ch. 110, par. 73, Joint Committee Comments, at 399 (Smith-Hurd 1968).) To initiate such proceedings against a third party, Rule 277 requires that the judgment creditor believe such person "has property of or is indebted to the judgment debtor," which thereby enables the creditor to determine whether the third party has "assets or income of the judgment debtor." Once that fact is ascertained, the court is empowered under subsection 2(c) of section 73 to compel that person "to deliver up any assets so discovered," if those assets are held under circumstances in which the judgment debtor could recover them in an appropriate action.

Significantly, subsection 2(c) implies that the property discovered be in the possession or control of the person against whom relief is sought. (See O'Shaughnessy and Sherman, *Procedure for Discovery of Assets After Judgment*, 50 Nw. U. L. Rev. 649, 654 (1955).) This view was implicitly endorsed in *North Bank v. F & H Resources, Inc.* (1977), 53 Ill. App. 3d 950, 369 N.E.2d 174, wherein it was held that at the discretion of the trial court a citation respondent may be ordered to sell property of the judgment debtor in respondent's possession. Also see *Brunswick v. Mandel* (1974), 59 Ill. 2d 502, 322 N.E.2d 25; *Levine v. Pascal* (1968), 94 Ill. App. 2d 43, 236 N.E.2d 425.

■■ In the present case, plaintiff seeks to invoke the statutory provisions quoted above for the purpose for which they are designed, namely, to determine if defendant had in his possession or control assets that should be applied to satisfaction of the judgment. She has failed, however, to establish, as required by section 73(c) of the Civil Practice Act, that defendant had any assets of the corporation in his possession or control or that he was indebted to the corporation.

In view of the above findings, it is unnecessary for us to determine

whether defendant corporation was an enterprise subject to the bulk transfers article.

For the reasons stated, the judgment of the trial court finding defendant personally liable to plaintiff for the indebtedness of the corporation is reversed.

Reversed.

LORENZ and WILSON, JJ., concur.