CATHY FITZGERALD, Plaintiff-Appellant, v. PAUL L. PRATT *et al.*, Defendants-Appellees.

Fifth District   No. 5—90—0017

Opinion filed January 16, 1992.—Rehearing denied February 24, 1992.

GOLDENHERSH, P.J., concurring in part and dissenting in part.

John D. Lynn, of St. Louis, Missouri, for appellant.

Catalina M. Alvarez, of Clayton, Missouri, for appellees.

JUSTICE HOWERTON delivered the opinion of the court:

Plaintiff, Cathy Fitzgerald, sued defendants, Paul Pratt and Pratt & Callis, P.C., for sexual harassment, assault, and failure to provide a safe workplace. The circuit court dismissed the action ruling that section 5(a) of the Illinois Workers' Compensation Act barred her claim. (Ill. Rev. Stat. 1989, ch. 48, par. 138.5(a).) Plaintiff appealed. We affirm in part, reverse in part and remand for further proceedings.

Plaintiff worked as a secretary for Paul Pratt, P.C., from August 1978 until her termination in September 1984. In 1986, Paul Pratt,

P.C., merged with another law firm to become Pratt & Callis, P.C. In 1988, plaintiff sued Paul Pratt and his current employer, Pratt & Callis, P.C. Count I of plaintiff's complaint against Paul Pratt and Pratt & Callis, P.C., alleged intentional infliction of emotional distress from sexual harassment. Count II alleged assault against Paul Pratt and Pratt & Callis, P.C. Count III alleged that Pratt & Callis, P.C., as the successor corporation of Paul Pratt, P.C., failed to provide a safe workplace. Plaintiff alleged in each count that Paul Pratt, P.C., was Paul Pratt's "alter ego" and, therefore, was liable for Paul Pratt's intentional torts. Similarly, plaintiff alleged in each count that Pratt & Callis, P.C., the successor corporation of Paul Pratt, P.C., was liable for both Paul Pratt's intentional torts and Paul Pratt, P.C.'s torts.

The two issues before this court are: (1) whether section 5(a) of the Illinois Workers' Compensation Act bars plaintiff's common law right of action against Paul Pratt and Pratt & Callis, P.C.; and (2) if section 5(a) does not bar the action, whether plaintiff can bring suit against Pratt & Callis, P.C., the successor corporation.

■ The Illinois Workers' Compensation Act establishes a system of liability without fault where traditional common law defenses available to the employer are exchanged for the prohibition of common law suits against the employer. (*Gannon v. Chicago, Milwaukee, St. Paul & Pacific Ry. Co.* (1958), 13 Ill. 2d 460, 150 N.E.2d 141; *Jablonski v. Multack* (1978), 63 Ill. App. 3d 908, 380 N.E.2d 924.) Section 5(a) of the Act provides an exclusive remedy to injured employees and "is part of the 'quid pro quo' in which the sacrifices and gains of the employees and employers are to some extent put in balance, for, while the employer assumes a new liability without fault, he is relieved of the prospect of large damage verdicts." 2A A. Larson, *The Law of Workmen's Compensation* §65.11 (1988).

The exclusive remedy provisions, sections 5(a) and 11 of the Illinois Workers' Compensation Act, state in pertinent part:

"§5. (a) No common law or statutory right to recover damages from the employer *** or the agents or employees of [the employer] for injury or death sustained by any employee while engaged in the line of his duty as such employee, other than the compensation herein provided, is available to any employee who is covered by the provisions of this Act ***."

"§11. The compensation herein provided, together with the provisions of this Act, shall be the measure of the responsibility of any employer engaged in any of the enterprises or businesses enumerated in Section 3 of this Act ***." Ill. Rev. Stat. 1989, ch. 48, pars. 138.5(a), 138.11.

Employees are barred from suing their employer unless the employee proves that: (1) the injury was not accidental; (2) the injury did not arise from her employment; (3) the injury was not received during the course of employment; or (4) the injury was not compensable under the Act. *Collier v. Wagner Castings Co.* (1980), 81 Ill. 2d 229, 408 N.E.2d 198.

We address first whether plaintiff's action against Paul Pratt, a coemployee, is barred by section 5(a) of the Act. It has long been the law in Illinois that section 5(a) bars claims against coemployees for negligence. (*Jablonski v. Multack* (1978), 63 Ill. App. 3d 908, 380 N.E.2d 924; *Sjostrom v. Sproule* (1965), 33 Ill. 2d 40, 210 N.E.2d 209.) Whether the same is true for intentional torts was first addressed by the Illinois Appellate Court in *Jablonski v. Multack* (1978), 63 Ill. App. 3d 908, 380 N.E.2d 924. There, the court held that "section 5(a) was not intended to be available to an employee who commits an intentional tort on a fellow worker." (*Jablonski*, 63 Ill. App. 3d at 914, 380 N.E.2d at 928.) In other words, the purpose of the Act was not to permit one who intentionally assaults a coemployee at work to defend on the grounds that plaintiff's sole remedy is workers' compensation.

The Illinois Supreme Court in *Meerbrey v. Marshall Field & Co.* (1990), 139 Ill. 2d 455, 564 N.E.2d 1222, adopted the *Jablonski* rationale and held "that the exclusive remedy provisions of the Act do not bar employees from pursuing a common law action against co-employees for injuries arising out of intentional torts." (*Meerbrey*, 139 Ill. 2d at 472, 564 N.E.2d at 1230.) The court reasoned that a "co-employee should not be permitted to assert that the plaintiff's injuries were accidental and therefore barred under the exclusivity provisions of the Act, when he himself committed the intentional tort." *Meerbrey*, 139 Ill. 2d at 472, 564 N.E.2d at 1230.

Defendant argues that *Meerbrey* is distinguishable from the case at bar and that the supreme court's decision in *Rodriguez v. Industrial Comm'n* (1983), 95 Ill. 2d 166, 447 N.E.2d 186, controls this case. In *Rodriguez*, the supreme court ruled that petitioner, a Mexican-American, was entitled to coverage under the Act for injuries he sustained when a coemployee struck him over the head with a two-by-four. The court, noting that the attack was motivated by racial and ethnic prejudice, reasoned that such injuries are a hazard of the workplace, especially in a society where employers are required by law to hire minorities. Thus, defendant argues that when the cause of the tension which resulted in the injury is a common hazard of the workplace, like race and ethnicity, the injured worker's sole remedy is

workers' compensation. Defendant claims that *Rodriguez* controls this case because sex, like race and ethnicity, is a similar force of strife in the workplace. Defendant claims that *Meerbrey*, a case involving false imprisonment, does not deal with the type of injury that occurs due to strife in the workplace and thus does not apply to this case. We disagree.

In *Rodriguez*, the issue before the court was whether the injury was compensable under the Act, not whether a common law right of action against a coemployee tortfeasor was barred. *Meerbrey*, on the other hand, dealt specifically with whether section 5(a) of the Illinois Workers' Compensation Act bars a common law cause of action against a coemployee for an intentional tort, which is precisely the issue in this case. Therefore, in light of the supreme court's holding in *Meerbrey*, we reverse the circuit court's dismissal as to Paul Pratt, the coemployee.

Next, we consider whether section 5(a) bars plaintiff's action against Pratt & Callis, P.C. In *Meerbrey*, the supreme court held that section 5(a) will not bar a common law action against an employer for injuries the employer or its "alter ego" intentionally inflicted, commanded or expressly authorized. (*Meerbrey*, 139 Ill. 2d at 464, 564 N.E.2d at 1226, citing 2A A. Larson, Workmen's Compensation §68.21 (1988).) Citing *Jablonski*, the court stated that the "employer should not be permitted to assert that the injury was 'accidental,' and therefore [barred] under the exclusive provisions of the Act, when he himself committed the act." *Meerbrey*, 139 Ill. 2d at 464, 564 N.E.2d at 1226.

■ To plead a common law cause of action under the "alter ego" theory, plaintiff must allege that the employee is the "alter ego" of the employer. (See *Collier*, 81 Ill. 2d at 239, 408 N.E.2d 202; *Jablonski*, 63 Ill. App. 3d at 912, 380 N.E.2d at 927-28.) Plaintiff in the instant action has so pled, and since this appeal reviews the dismissal of this action on the pleadings, we must assume as true that Paul Pratt was the "alter ego" of Paul Pratt, P.C. See *Johnson v. Federal Reserve Bank* (1990), 199 Ill. App. 3d 427, 557 N.E.2d 328.

At issue here, however, is not whether section 5(a) bars plaintiff's claim against Paul Pratt, P.C.—*Meerbrey* answers that—but whether Pratt & Callis, P.C., the successor corporation of Paul Pratt, P.C., assumes liability for Paul Pratt's intentional torts committed while employed by Paul Pratt, P.C. In other words, does a successor corporation assume liability for the intentional tort committed by the predecessor corporation's employee, whose misconduct was not in furtherance of corporate business? We hold it does not.

■ Paul Pratt was the sole shareholder of Paul Pratt, P.C., a professional corporation organized under the Professional Service Corporation Act (Ill. Rev. Stat. 1989, ch. 32, par. 415—1 *et seq.*). Under Illinois law, a corporation is a legal entity separate and distinct from its shareholders, directors and officers. (*Stap v. Chicago Aces Tennis Team, Inc.* (1978), 63 Ill. App. 3d 23, 379 N.E.2d 1298.) Separate identities may be disregarded, however, in situations where it would otherwise pose an obstacle to the protection or enforcement of private or public rights. (*Froehlich v. J.R. Froehlich Manufacturing Co.* (1981), 93 Ill. App. 3d 179, 416 N.E.2d 1134.) This exception is codified in the Illinois Professional Service Corporation Act (Ill. Rev. Stat. 1989, ch. 32, par. 415—8), which states in pertinent part:

> "Nothing contained in this Act shall be interpreted to abolish, repeal, modify, restrict or limit the law now in effect in this State applicable to the professional relationship and liabilities between the person furnishing the professional services and the person receiving such professional service and to the standards of professional conduct. Any officer, shareholder, agent or employee of a corporation organized under this Act shall remain personally and fully liable and accountable for any negligent or wrongful acts or misconduct committed by him ***."

In recognition of the exception, this statute prevents professionals organized under the Illinois Professional Service Corporation Act from avoiding malpractice liability by asserting that only the assets of the corporate entity can be reached.

■ Although lacking a statutory foundation, Illinois courts have applied the principles of this exception to workers' compensation by judicially creating the "alter ego" theory. "Alter ego," as applied to workers' compensation law, prevents an employer and/or coemployee from asserting the exclusive remedy provision of the Act in cases where the employee tortfeasor acts as the "alter ego" of the employer. See *Meerbrey*, 139 Ill. 2d 455, 564 N.E.2d 1222; *Jablonski*, 63 Ill. App. 3d 908, 380 N.E.2d 924, citing 2A A. Larson, Workmen's Compensation §68.11 (1988); see also *Johnson v. Federal Reserve Bank* (1990), 199 Ill. App. 3d 427, 557 N.E.2d 328.

■ It is clear that had plaintiff pled a cause of action against Paul Pratt, P.C., a common law cause of action would lie. But, in the instant case, Paul Pratt, P.C., merged with another firm forming Pratt & Callis, P.C., in 1986, two years after plaintiff stopped working for Paul Pratt, P.C., and two years prior to filing this suit. In an attempt to attach liability to Pratt & Callis, P.C., plaintiff pled the "alter ego" theory and combined it with the allegation that a successor

corporation assumes the debts and liabilities of its predecessor. The section of the Illinois Business Corporation Act that deals with mergers and consolidations states:

"When such merger or consolidation has been effected:

\* \* \*

(5) Such surviving or new corporation shall thenceforth be responsible and liable for all the liabilities and obligations of each of the corporations so merged or consolidated; and any claim existing or action or proceeding pending by or against any of such corporations may be prosecuted to judgement as if such merger or consolidation had not taken place, or such surviving or new corporation may be substituted in its place." (Ill. Rev. Stat. 1989, ch. 32, par. 11.50(a)(5).)

"[T]he universal rule applicable to mergers or consolidations is that, by operation of law, the successor corporation assumes all debts and liabilities of the predecessor corporation precisely as if it had incurred those liabilities itself. [Citations.] \*\*\* And that concept is uniformly codified in every merger statute \*\*\*." *Krull v. Celotex Corp.* (N.D. Ill. 1985), 611 F. Supp. 146, 148.

█ No single case, however, has ever attached liability to a successor corporation by virtue of this merger statute for the intentional misconduct of a predecessor corporation's employee *whose act was committed not in the furtherance of the predecessor corporation's business*, "alter ego" theory to the contrary notwithstanding. We hold that a successor, professional corporation is not liable as a matter of law for any intentional misconduct that was committed not in furtherance of the predecessor, professional corporation's business.

We, therefore, affirm the circuit court in dismissing plaintiff's complaint against Pratt & Callis, P.C., but reverse it with respect to Paul Pratt, the coemployee.

The circuit court is affirmed in part and reversed in part, and this cause is remanded for further proceedings.

*Affirmed in part; reversed in part and remanded.*

LEWIS, J., concurs.

PRESIDING JUSTICE GOLDENHERSH, concurring in part and dissenting in part:

I respectfully dissent from the majority's holding reversing the circuit court's dismissal of this action against the coemployee pursu-

ant to section 5(a) of the Workers' Compensation Act (the Act) (Ill. Rev. Stat. 1989, ch. 48, par. 138.5(a)).

The essential question in this appeal is whether this case is controlled by the recent case of *Meerbrey v. Marshall Field & Co.* (1990), 139 Ill. 2d 455, 564 N.E.2d 1222, or the earlier case of *Rodriguez v. Industrial Comm'n* (1983), 95 Ill. 2d 166, 447 N.E.2d 186, both discussed in the majority opinion. It is my position that the facts of this case fit under *Rodriguez* and, therefore, the cause of action by plaintiff, Cathy Fitzgerald, is barred pursuant to section 5(a).

Initially, we must categorize the act of sexual harassment alleged in plaintiff's complaint in relation to the complained-of actions in both *Meerbrey* and *Rodriguez*. *Meerbrey* involved actions by a coemployee based on knowledge of prior employer action taken against Meerbrey, and essentially the nature of the acts by the plaintiff's coemployee was that of a security person, the coemployee's position. In *Rodriguez*, the act of assault by the coemployee was not the type normally taken as part of the job of the aggressor coemployee. The *Rodriguez* court noted that it was an act motivated by prejudice against an ethnic group, and as such, reflected a pervasive societal problem from which the workplace is not immune.

In the case at bar, the alleged sexual harassment is part of a pernicious societal attitude toward women. It is as unreasoning and unjustifiable as the prejudice toward an ethnic group which motivated the actor in *Rodriguez* and as unrelated to any legitimate job function as the actor's aggression in *Rodriguez*. This stands in contrast to the actions taken by the coemployee in *Meerbrey*. An analysis of the nature of the acts alleged against the coemployee leads me to conclude that the act alleged in plaintiff's complaint is a *Rodriguez* type of act.

This categorization as a *Rodriguez* act leads to certain consequences in the case at bar. The court in *Rodriguez* deemed the aggressive act by the coemployee as "neutral" and concluded thereby that the victim-employee was covered under the Act. The *Rodriguez* court held the assault to be a neutral and compensable risk and explained its holding as follows:

> "We believe that assaults by co-employees in the workplace that are motivated by general racial or ethnic prejudice are best treated as compensable 'neutral' risks arising out of the employment. Prejudice of this sort does not usually result in physical attacks in the world at large: it would be incorrect to say that people run the everyday risk of assault on the street or in public places because of their Mexican heritage. However,

when an assault by a co-employee rooted solely in ethnic prejudice occurs in the workplace, as here, it is presumably the result of an irrational human impulse toward violence which is as much a part of the victim's work environment as a defective tool would be. The victim may be unaware of the danger, but encounter it he must if the work to which he is assigned is to be completed. It is legitimately a hazard presented by the work. This is particularly true in our polyglot society in which employers are now required by Federal law to hire qualified racial minorities. (42 U.S.C. sec. 2000e—2(a) (1976); see *United Steelworkers of America v. Weber* (1979), 443 U.S. 193, 61 L. Ed. 2d 480, 99 S. Ct. 2721.) With more minorities in the workplace, the potential for ethnic or racial friction is likely to increase. It would be anomalous for the law to address the problems of bigotry and lack of opportunity in society by requiring employers to hire qualified members of minority groups while not also requiring them to make the workplace as safe for minorities so hired as for other workers. (See Ill. Rev. Stat. 1977, ch. 48, par. 851 (declaration of public policy referring to the need to utilize the productive capacities of all individuals to the fullest extent possible regardless of ancestry and to insure that workers have resources sufficient to maintain a reasonable standard of living without resort to public charity).) We believe that, in the absence of anything that would personalize the incident, a bigoted and violence-prone co-worker is as much a risk inherent in employment in an integrated or ethnically mixed workplace as a defective machine or ceiling might be." (95 Ill. 2d at 174-75, 447 N.E.2d at 190.)

One may reasonably hold that the reasoning of the court in *Rodriguez* concerning violence against an ethnic group is just as applicable to acts of sexual harassment.

This categorization, however, carries the consequence of rendering the compensation remedy the exclusive remedy, according to the test of *Collier v. Wagner Castings Co.* (1980), 81 Ill. 2d 229, 408 N.E.2d 198. The components of that test are stated in the majority opinion and it is readily apparent that plaintiff in this cause fails at least two factors necessary to escape exclusivity under section 5(a). In this instance, the employee-plaintiff is not able to claim that the injury was not accidental, given the *Rodriguez* definition, and certainly that the injury was not compensable under the Act given the quotation from *Rodriguez* noted above. I thus conclude that, given the characterization of the alleged sexual harassment and our supreme court's direc-

tion in *Rodriguez*, the exclusivity provisions of section 5(a) preclude plaintiff from proceeding on this action.

I would therefore hold pursuant to our supreme court's rulings in *Rodriguez* and *Collier* that workers' compensation is the exclusive remedy against the coemployee pursuant to section 5(a) of the Act and would affirm the circuit court on this issue.