**Susan JASKOWSKI, Plaintiff,**

v.

**RODMAN & RENSHAW, INC., Norman Mains, Gregory P. Quinlivan and Kurt Karmin, Defendants.**

**No. 92 C 4161.**

United States District Court, N.D. Illinois, E.D.

Feb. 18, 1993.

Linda Friedman and Mary Stowell, Leng, Stowell, Friedman & Vernon, Chicago, IL, for plaintiff.

Adrianne C. Mazura, Howard L. Teplinsky, Steven L. Loren, Sally J. McDonald, and Rudnick & Wolfe, Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

This action stems from alleged sexual harassment and discrimination by defendants Rodman & Renshaw, Inc. ("Rodman & Renshaw"), Norman Mains, Gregory Quinlivan, and Kurt Karmin (collectively "defendants") against plaintiff Susan Jaskowski ("Jaskowski"). Defendants move to dismiss Count II of the complaint, which alleges sexual discrimination in violation of the Civil Rights Act of 1964 and the Civil Rights Act of 1991, arguing that the Civil Rights Act of 1991 does not apply to this action. Additionally, defendants seek to dismiss Count V, which alleges intentional

infliction of emotional distress, claiming that the Count is preempted by the Illinois Workers' Compensation Act. For the following reasons, we grant in part and deny in part defendants' motion to dismiss.

## I. Factual Background [1]

Jaskowski worked for Rodman & Renshaw, a stock brokerage firm, from 1981 until October of 1991, when she took a pregnancy leave of absence. Having started as a clerk in the mail room, Jaskowski worked her way up through the ranks at Rodman & Renshaw to become Vice President, Director of Human Resources. Mains was President of Rodman & Renshaw, Quinlivan was Executive Vice President and General Counsel, and Karmin was Chairman of the Board and a member of the Executive Committee.

After Jaskowski became pregnant, several co-workers made objectionable comments about her condition. In addition to rubbing Jaskowski's stomach uninvited, Mark Grant, an Executive Vice President, commented on the enlargement of pregnant women's breasts, and remarked that he wanted to work with young, attractive females. Lawrence Helfand, another Executive Vice President, stated that Jaskowski "should have stayed at [her] desk rather than out getting pregnant," and suggested that he was "going to have to tell [plaintiff's husband] to keep his penis in his pants." Cmplt. at ¶ 13(c). Finally, two other Executive Vice Presidents, not named as defendants, told Jaskowski that they suspected she had tried to get pregnant, while Karmin commented that his pregnant secretary would not return to work, as her place was at home with her baby.

After Jaskowski became pregnant, Mains and Quinlivan assured her, on several occasions, that when she returned from maternity leave, her position, or one of comparable pay and responsibility, would be available. Jaskowski began her leave of absence in October, 1991, and in December, Rodman & Renshaw hired a man to fill her

position. The replacement received a forty percent higher salary than Jaskowski had received.

When Jaskowski returned from her maternity leave, Rodman & Renshaw offered her a job as a mutual funds clerk—a position which paid less than half the salary she had earned as a Vice President. Later, the firm offered her the position of Assistant Director of Human Resources. Again, the job paid less than her former salary.

## II. Discussion

### A. Count II

In Count II, Jaskowski charges defendants with sex discrimination in the terms, conditions, and privileges of employment in violation of 42 U.S.C. § 2000e. She further alleges that by condoning offensive touching and remarks, defendants created a hostile work environment in violation of Title VII and the Civil Rights Act of 1991. Defendants contend that the Civil Rights Act of 1991, effective, in relevant part, as of November 21, 1991, does not apply retroactively, and therefore does not apply to Jaskowski's claim. Jaskowski maintains that even if the Civil Rights Act of 1991 does not apply to those parts of her claim arising out of conduct engaged in prior to November 21, 1991, she has still made out a claim under the Civil Rights Act of 1964, and therefore, Count II should not be dismissed. We agree.

Although the Supreme Court has not addressed the retroactivity of the Civil Rights Act of 1991, which, among other things, amended the Civil Rights Act of 1964 to allow plaintiffs to recover compensatory and punitive damages, the rule in this circuit is that the Civil Rights Act of 1991 applies prospectively. *See Luddington v. Indiana Bell Telephone Co.,* 966 F.2d 225, 229 (7th Cir.1992) ("We hold that the new act is applicable only to conduct engaged in after the effective dates (plural because several sections carry different ef-

---

1. As appropriate when considering a motion to dismiss, we will view all well-pleaded factual allegations, as well as reasonable inferences therefrom, in the light most favorable to the plaintiff. *See Balabanos v. North Am. Invest.*

*Group, Ltd.,* 708 F.Supp. 1488, 1491 n. 1 (N.D.Ill. 1988) (citing *Ellsworth v. City of Racine,* 774 F.2d 182, 184 (7th Cir.1988), *cert. denied,* 475 U.S. 1047, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986)).

fective dates) in the act, at least if the suit has been brought before the effective date."); *Simon v. Ravenswood Hospital Medical Ctr.*, 814 F.Supp. 33 (N.D.Ill.1992) (this Court held that the Civil Rights Act of 1991 did not apply to conduct occurring before the effective dates of the Act, even if the suit was filed *after* November 21, 1991). Accordingly, the Civil Rights Act of 1991 does not apply to those actions alleged to have taken place prior to November 21, 1991.[2]

The inapplicability of the 1991 Act, however, does not eliminate Jaskowski's claim. It simply means that for those actions taken prior to November 21, 1991, Jaskowski cannot recover compensatory or punitive damages. The underlying claims of sexual discrimination and harassment, in the form of a hostile work environment, are still actionable under Title VII of the Civil Rights Act of 1964.[3] *See Meritor Savings Bank v. Vinson*, 477 U.S. 57, 67–69, 106 S.Ct. 2399, 2405–06, 91 L.Ed.2d 49 (1986). Accordingly, we deny defendants' motion to dismiss Count II.

### B. Count V

In Count V, Jaskowski asserts a claim for intentional infliction of emotional distress. Defendants contend that this claim is preempted by the Illinois Workers' Compensation Act ("IWCA"), and that, in any event, Jaskowski fails to adequately allege a claim for intentional infliction of emotional distress.

#### (i) Preemption

■ The IWCA contains an exclusivity provision, which bars an employee from bringing a common law suit against his employer for an accidental injury sustained in the course of employment which is compensable under the Act. Ill.Rev.Stat. ch. 48, ¶ 138.5(a). An injury intentionally inflicted by a co-employee may still be accidental within the meaning of the IWCA, if

the employer did not direct, encourage, or expressly authorize the co-employee's conduct. *See Meerbrey v. Marshall Field & Co.*, 139 Ill.2d 455, 564 N.E.2d 1222, 1226, 151 Ill.Dec. 560, 564 (1990).

■ In this case, Jaskowski alleges that Rodman & Renshaw is properly accountable for the alleged harassment and discrimination she describes since (1) officers committed the alleged acts of harassment, (2) she brought the existence of sexual harassment at Rodman & Renshaw to the attention of its President, Howard Silverman, who responded that the issue was not a priority, and (3) the named defendants were directly involved in making or approving the decision to replace her with a man and to offer her lesser positions upon her return. While some of these allegations involve direct actions by the defendants, others can only be attributed to defendants by means of *respondeat superior* or on the theory that defendants implicitly approved of the harassment by ignoring evidence that it was occurring. Under Illinois law, however, "derivative claims stemming from the conduct of employees under *respondeat superior* are exactly those types of claims preempted by the [IWCA]." *Bailey v. Unocal Corp.*, 700 F.Supp. 396, 400 (N.D.Ill.1988). Absent actual direction, encouragement, or participation in the intentional infliction of emotional distress, a common law claim is preempted. *Collier v. Wagner Castings Co.*, 81 Ill.2d 229, 239, 408 N.E.2d 198, 203, 41 Ill.Dec. 776, 781 (1980). *See also Bailey*, 700 F.Supp. at 400 (plaintiff's allegations that the employer implicitly approved of or acquiesced in the unlawful conduct insufficient to establish direction, encouragement, or committal of intentional infliction of emotional distress). Accordingly, Jaskowski's claim for intentional infliction of emotional distress must be limited to those actions which the defen-

---

**2.** That behavior would include the offensive touching and remarks, but would not include Rodman & Renshaw's failure to place Jaskowski in her previous, or a comparable, position when she returned from her maternity leave.

**3.** Despite defendants' claims to the contrary, plaintiff specifically alleges that defendants'

conduct violates Title VII and the Civil Rights Act of 1991. Therefore, we need not discuss whether Jaskowski would still have a claim even if she had failed to specifically allege a violation of Title VII in addition to a violation of the 1991 Act.

dants allegedly authorized or committed themselves—namely, the decision to replace Jaskowski and to offer her lesser positions upon her return.[4]

The question then presented is whether the alleged discriminatory conduct—that is, the decision to replace Jaskowski and offer her a lesser position—supports a claim for intentional infliction of emotional distress. To state a claim for intentional infliction of emotional distress, a plaintiff must allege, among other things, that the defendant's conduct was extreme and outrageous. *Class v. New Jersey Life Ins. Co.*, 746 F.Supp. 776, 777 (N.D.Ill. 1990); *Heying v. Simonaitis*, 126 Ill. App.3d 157, 466 N.E.2d 1137, 1143, 81 Ill. Dec. 335, 341 (1st Dist.1984). Illinois has a high standard for extreme and outrageous conduct. *See Public Finance v. Davis*, 66 Ill.2d 85, 360 N.E.2d 765, 767, 4 Ill.Dec. 652, 654 (1976) ("Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency."); *Bailey v. Unocal Corp.*, 700 F.Supp. at 399 (court recognized that "Illinois has a very high standard for what constitutes 'extreme and outrageous' conduct."). Behavior is extreme and outrageous when it "go[es] far beyond the ordinary indignities one can be expected to endure in the workplace." *Clay v. Quartet Mfg. Co.*, 644 F.Supp. 56 (N.D.Ill.1986) (court held that wrongful denial of employment benefits, coercing employee to engage in sexual relationship, offensive remarks, and unwanted touchings constituted extreme and outrageous conduct).

There is little doubt that the alleged discrimination must have caused Jaskowski concern and distress. However, while we certainly to not condone conduct such as that alleged here, we cannot say that it amounts to behavior beyond all possible bounds of decency and which a reasonable

person could not be expected to endure. *See, e.g., Stoecklein v. Illinois Tool Works, Inc.*, 589 F.Supp. 139, 146 (N.D.Ill.1984) (allegations that employer unlawfully demoted and forced plaintiff to retire due to age and then reneged on promise to provide severance pay and job counselling did not establish extreme and outrageous conduct) *citing Witkowski v. St. Anne's Hospital of Chicago*, 113 Ill.App.3d 745, 447 N.E.2d 1016, 69 Ill.Dec. 581 (1st Dist.1983) (allegations that employer wrongfully discharged plaintiff to prevent her from securing long-term disability benefits held not extreme and outrageous enough to state claim). *See also Pelizza v. Reader's Digest Sales and Services, Inc.*, 624 F.Supp. 806, 811 (N.D.Ill.1985) (plaintiff failed to allege extreme and outrageous conduct when he alleged that employer fired him without just cause and in violation of his employment contract). Jaskowski, then, finds herself in an unfortunate position. Those portions of Count V which are possibly extreme and outrageous, namely the unwanted touching and offensive comments, cannot be attributed to the defendants, and those actions for which the defendants are responsible do not fall outside all bounds of decency. We therefore dismiss Count V of Jaskowski's claim.

### III. Conclusion

For the foregoing reasons, we grant defendants' motion to dismiss Count V of the complaint, but deny their motion to dismiss Count II. It is so ordered.

---

**4.** Although Jaskowski cites to numerous cases in which courts ruled that a claim for intentional infliction of emotional distress is not preempted by the IWCA, these cases are not applicable here. Cases such as *Fitzgerald v. Pratt*, 223 Ill.App.3d 785, 585 N.E.2d 1222, 166 Ill.Dec. 200 (Fifth Dist.1992) and *Zakutansky v. Bionetics*

*Corp.*, 806 F.Supp. 1362 (N.D.Ill.1992), involved allegations that defendants either acted intentionally or were alter-egos of the employer. With respect to the allegations of humiliating comments and uninvited touching, neither is the case here.