Danielle SMALL, Plaintiff,

v.

CHICAGO HEALTH CLUBS, INC., Defendant.

No. 93 C 3340.

United States District Court, N.D. Illinois, E.D.

Jan. 20, 1994.

Richard P. Campbell, Anthony S. DiVincenzo, Campbell & DiVincenzo, Chicago, IL, for plaintiff.

Barry A. Hartstein, Kathleen Ann McCabe, Jenner & Block, Chicago, IL, for defendant.

### *AMENDED MEMORANDUM OPINION AND ORDER*

PLUNKETT, District Judge.

This matter is before the Court on Defendant Chicago Health Clubs, Inc.'s ("CHC") motion to dismiss, or in the alternative, to strike portions of Plaintiff Danielle Small's ("Small") Complaint. For the reasons discussed below, Defendant's motion to strike paragraphs 11 and 26 of Plaintiff's Complaint and to dismiss Counts II and III is granted.

### *Background*

This case arises out of a series of incidents that allegedly occurred at a CHC facility in Glendale Heights, Illinois, during May and June 1991. The incidents complained of involve the Plaintiff, who was at the time employed as the head receptionist at the facility, James Passi, who is the general manager of the facility, and various other individuals employed at the facility. Because we take the Plaintiff's allegations as true on a motion to dismiss, we present the facts here as alleged by Plaintiff in her Complaint.

On or about May 11, 1993, Ms. Small met with Mr. Passi to request permission to abstain from wearing the usually-required attire of spandex tights. At Mr. Passi's insistence, she advised him, in confidence, of the nature of the health problem that necessitated her request. Mr. Passi breached this confidence by disclosing the nature of her health problem to her co-workers.

The conduct that grew out of Mr. Passi's indiscretion at best can be described as juvenile. Other employees began harassing Ms. Small about having an illness or disease. In the presence of other coworkers, she was asked by Assistant Manager Frank Price about her condition. Mr. Passi, Mr. Price, a manager by the name of Mr. Orlando Silva, and an assistant manager by the name of Joseph Madonna jointly placed a telephone call to the CHC facility during which they asked to speak with Plaintiff, identifying her by a nickname based on her health problem. The managers and other employees at the facility then referred to Ms. Small by that nickname for a period of at least four weeks. The events escalated to the point that Ms. Small was paged over the loudspeaker system using a related nickname. Several managers broadcast the nickname over the telephone intercom.

According to Ms. Small, she complained about these activities on three occasions. She confronted Mr. Passi about the telephone call incident on May 14, 1993, and about the continuing telephone conduct on June 11, 1991. She also complained to Mr. Passi's supervisor. Ms. Small's complaints did not stop the conduct. In fact, the con-

duct worsened after Plaintiff's complaints to Mr. Passi's supervisor.

Ms. Small's complaints resulted in various retaliatory actions. When Plaintiff advised Mr. Passi of her intent to take legal action, he threatened to suspend her if she contacted an attorney. In addition, Plaintiff was denied use of the restroom facilities, denied a promised salary increase, and demoted. Plaintiff resigned in August 1991 because she was unable to perform her duties as a result of the alleged conduct. Plaintiff filed this action in federal court on June 4, 1993.

Count I of Plaintiff's complaint alleges that CHC's conduct "created a hostile working environment where gender-based discrimination was permitted and encouraged." (Compl. at ¶ 25.) Plaintiff alleges further that CHC failed to remedy the harassment despite being notified by Plaintiff of the complained-of conduct, and that the conduct caused Plaintiff to suffer severe emotional distress. (Compl. at ¶ 26.) Plaintiff alleges that CHC's actions were intentional. (Compl. at ¶ 28.) Plaintiff seeks compensatory damages under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991.

Count II alleges that CHC is liable, under the doctrine of *respondeat superior*, for negligent infliction of emotional distress. Plaintiff alleges that CHC had a duty to treat Plaintiff fairly and to provide an appropriate work environment, and breached that duty by harassing Plaintiff and by failing to prevent the conduct of its managing agents and employees. (Compl. at ¶ 31.) Plaintiff alleges that CHC's negligence proximately caused Plaintiff to suffer severe emotional distress. (Compl. at ¶¶ 32–33.) Plaintiff seeks $100,-000 as compensation for that emotional distress.

Count III alleges that CHC is liable for intentional infliction of emotional distress under the doctrine of *respondeat superior.* Plaintiff's intentional infliction of emotional distress claim is based on the same conduct underlying her negligent infliction of emotional distress claim. Plaintiff alleges that such conduct was intentional and "extremely outrageous," and was the proximate cause of her severe emotional distress. (Compl. at ¶¶ 37–39.) Plaintiff seeks $100,000 in damages under her intentional infliction claim.[1]

Defendant filed its motion to dismiss on August 6, 1993.

### *Discussion*

On a motion to dismiss, the court views the allegations of the complaint as true, along with reasonable inferences therefrom, and views these in the light most favorable to the plaintiff. *Powe v. City of Chicago,* 664 F.2d 639, 642 (7th Cir.1981). Plaintiff's complaint should not be dismissed "unless it appears beyond doubt that the plaintiff is unable to prove any set of facts which would entitle the plaintiff to relief.... Nevertheless, a plaintiff must allege sufficient facts to outline the cause of action, proof of which is essential to recovery." *Ellsworth v. City of Racine,* 774 F.2d 182, 184 (7th Cir.1985), *cert. denied,* 475 U.S. 1047, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986) (citations omitted).

### I. *Plaintiff's Title VII Claim* [2]

Defendant first maintains that Plaintiff's claim for compensatory damages in Count I

---

**1.** Plaintiff filed a separate action against Messrs. Passi, Silva, Price, and Madonna in the Circuit Court of DuPage County on June 10, 1993. (*Small v. Passi,* No. 93 L 1120, Cir.Ct. of DuPage Co., June 11, 1993.) That complaint alleges, in virtually identical language, the same facts and conduct alleged in Plaintiff's federal complaint. The two count complaint alleges both negligent and intentional infliction of emotional distress.

**2.** We decline Plaintiff's invitation to defer our ruling on this issue until the Supreme Court issues its decision in *Landgraf v. USI Film Prod.,* 968 F.2d 427 (5th Cir.1992), *cert. granted,* —— U.S. ——, 113 S.Ct. 1250, 122 L.Ed.2d 649

(1993). The issues being taken up by the Court in that case and in the companion case of *Rivers v. Roadway Express, Inc.,* 973 F.2d 490 (6th Cir. 1992), *cert. granted,* —— U.S. ——, 113 S.Ct. 1250, 122 L.Ed.2d 649 (1993) are not presented by the facts here. The Supreme Court has expressly limited review in those cases to the question of whether the Civil Rights Act of 1991 applies to cases that were pending when the Act was enacted. *Landgraf v. USI Film Prod.,* —— U.S. ——, 113 S.Ct. 1250, 122 L.Ed.2d 649 (1993); *see* Pet.Brief at *2, *Landgraf v. USI Film Prod.,* 1993 WL 326575 (Apr. 30, 1993); Pet. Brief at *2, *Rivers v. Roadway Express, Inc.,* 1993 WL 329989 (Apr. 30, 1993). That is not the

should be stricken because the compensatory relief made available under the 1991 Civil Rights Act is not available when the conduct giving rise to the claim occurred prior to enactment of the Act.[3]  According to Defendant, a prevailing plaintiff is entitled to equitable remedies, not compensatory damages, under the pre–1991 version of the Civil Rights Act.  (Mot. to Dismiss at ¶ 4(a).)  Defendant argues that the 1991 amendments to the Civil Rights Act that made available compensatory damages cannot be applied retroactively to cover damages caused by conduct occurring before the 1991 Act's November 21, 1991 effective date.  (*Id.* at ¶ 4(b).)

■ The Seventh Circuit's recent decision in *Mojica v. Gannett Company, Inc.* leaves no room for doubt that the law in this Circuit is that the Civil Rights Act of 1991 is not to be applied retroactively to cases arising out of conduct that occurred prior to the enactment of the 1991 Act.  7 F.3d 552 (7th Cir. 1993).  There, the Seventh Circuit held that

> courts should look to the time of the conduct giving rise to the claim to determine the statute's applicability.  Simply put, if the conduct took place before the statutes's enactment, it is not covered; if after, it is covered.

*Id.* at 558.

We read *Mojica* as shutting the door on retroactive application of the 1991 Act to situations involving pre-enactment conduct, even when the suit is filed after enactment. Admittedly, the Seventh Circuit decision whose reasoning and conclusion the Seventh Circuit reaffirmed in *Mojica* left open to the possibility of retroactive application in situations where the conduct occurred before enactment but the suit was filed after enactment.  *Luddington v. Indiana Bell Tel. Co.,*

966 F.2d 225, 229–230 (7th Cir.1992) ("We hold that the new act is applicable only to conduct engaged in after the effective dates . . . in the act, at least if the suit had been brought before the effective date.").  Nonetheless, that limitation is not expressed in *Mojica.*

Nothing in the text of *Mojica* indicates that the Seventh Circuit intended to tie the applicability of the Civil Rights Act of 1991 to anything other than the timing of the conduct.  Although quoting the language from *Luddington* set out above, *Mojica,* 7 F.3d at 586, the Seventh Circuit focused its discussion of the rationales behind prospective application on the timing of the *conduct* at issue.

> At the core of [Justice Scalia's discussion in *Kaiser Alum. & Chemical Corp. v. Bonjorno,* [494 U.S. 827,] 110 S.Ct. 1570, [108 L.Ed.2d 842] (1990) ] is the inescapable reality that retroactive application 'is contrary to fundamental notions of justice. . . .'  This is so because retroactive application often penalizes conduct which was acceptable, at least under the rule of law, when the conduct occurred.  General retroactive application diminishes one's ability to conform conduct to the boundaries imposed by law.
>
> . . . .
>
> The historical reason for applying statutes prospectively is to advance '[t]he principle that the legal effect of conduct should be assessed under the law that existed at the time when the conduct took place. . . .'

*Id.* at 557–58 (quoting *Kaiser,* 494 U.S. at 854, 110 S.Ct. at 1586).  The Seventh Circuit also concentrated on the timing of the alleged conduct when applying *Luddington*

---

situation here.  The Court sees no reason to delay its ruling on the issue presented here when the Supreme Court's decision in *Landgraf* may not be controlling.

**3.**  Defendant's initial motion to dismiss asked the court to dismiss Count I, or alternatively, to strike paragraphs 11 and 26 of the Complaint on the grounds that the Civil Rights Act of 1991 could not be applied retroactively to conduct occurring before the effective date of the Act and the pre–1991 version of the Civil Rights Act limited relief to reinstatement, back pay, and other appropriate relief but did not allow for compen-

satory damages for such things as pain, suffering, and emotional distress.  (Mot. to Dismiss, or in the Alt., Strike Port. of Compl. at ¶ 4 (hereafter, "Mot. to Dismiss").)  Defendant subsequently abandoned its request for outright dismissal of Count I, noting that although Plaintiff cannot recover compensatory damages for conduct occurring prior to passage of the 1991 Act Plaintiff could proceed with a Title VII claim seeking relief consistent with the pre-amendment version of Title VII.  (Reply Mem. in Supp. of Def.'s Mot. to Dismiss at 5 n. 3 & 7.)

and *Mozee v. American Comm'l Marine Serv. Co.* to the facts of *Mojica.*[4] "Under *Mozee* and *Luddington,* because the conduct giving rise to the claim occurred before the new Act became effective, [the defendant] is not liable under the new law. [The defendant] is potentially liable only under the civil rights laws in effect at the time it failed to promote Mojica." *Id.* at 558.

Under the rule set out in *Mojica,* the Civil Rights Act of 1991 does not govern the disposition of Plaintiff's Title VII claim. The conduct that gives rise to Plaintiff's claim occurred during May and June of 1991. Any allegedly unlawful conduct necessarily ceased as of August 1991 when Plaintiff resigned her position at CHC. All of the acts alleged in Plaintiff's complaint thus occurred prior to the Act's enactment on November 21, 1991. The fact that Plaintiff commenced this action after the enactment of the Civil Rights Act of 1991 does not bring this case within the purview of that Act.

As Defendant CHC recognizes, however, this does not mean that Plaintiff has no cause of action under Title VII. The upshot of the Seventh Circuit's decisions is that Plaintiff's Title VII claim will be governed by the substantive and procedural provisions of Title VII as they existed at the time of the alleged conduct.

In the context of Defendant's motion to dismiss or strike, that means that Plaintiff's complaint has certain "problems" in its pleading of Plaintiff's Title VII claim. Certain allegations contained in Plaintiff's complaint are irrelevant. In addition, certain remedies and procedural rights sought by Plaintiff are not available under the applicable version of Title VII. We address these issues seriatim.

■ Plaintiff's allegations that Defendant's conduct caused Plaintiff "deep[ ] distress," (Compl. at ¶ 11), and "acute emotional distress," (Compl. at ¶ 26) are irrelevant to Plaintiff's Title VII claim because the pre-1991 version of the Civil Rights Act and Title VII provide for equitable relief such as rein-

statement or back pay, and not for recovery of compensatory damages for such things as pain and suffering and emotional distress. *See* 42 U.S.C. § 2000e–5(g) (1981). In addition, to the extent that Plaintiff's prayer for "a judgment ... in an amount sufficient to compensate her for back pay and front pay, and ... attorneys' fees" reflects a claim for compensatory damages, that portion of the complaint is defective for the same reason. Plaintiff's jury demand is likewise inappropriate, at least as it pertains to the Title VII claim. A plaintiff bringing a claim under the old version of Title VII has no right to a jury trial. *Mojica,* 7 F.3d at 559.

Consistent with the above discussion, Defendant's motion to strike paragraphs 11 and 26 of Plaintiff's complaint is granted. Alternatively, Plaintiff may elect to amend Count I of her complaint to bring it into conformity with the requirements of the applicable version of Title VII.

## II. *Plaintiff's Negligent Infliction of Emotional Distress Claim*

■ In Count II, Plaintiff asserts that CHC negligently inflicted emotional distress because it failed to take appropriate steps to prevent continued harassment and that CHC's negligence proximately caused her severe emotional distress. (Compl. at ¶ 31.) Plaintiff attempts to impute the conduct of CHC employees and managing agents to Defendant CHC and to state a common law action for negligent supervision. Defendant CHC contends that this claim is barred by Illinois Workers' Compensation Act.

The Illinois Workers' Compensation Act ("IWCA"), 820 ILCS 305/1 et seq. (1993), contains an exclusivity provision which bars an employee from bringing a common law suit against an employer for an accidental injury arising out of and in the course of employment which is compensable under the Act. *Jaskowski v. Rodman & Renshaw, Inc.,* 813 F.Supp. 1359, 1362 (N.D.Ill.1993) (citing Illinois Workers' Compensation Act, 820 ILCS 305/1 (1993)).

---

4. *Mozee* is the other 1992 decision by the Seventh Circuit addressing the issue of whether the Civil Rights Act of 1991 should be applied retro- actively. *Mozee v. American Comm'l Marine Service Co.,* 963 F.2d 929 (7th Cir.1992).

The IWCA abrogated employer liability for common law negligence. When it was enacted, the IWCA established a no fault system of liability against the employer and abrogated common law defenses of contributory negligence, assumption of risk and fellow servant. *Crissman v. Healthco, Int'l*, 1992 WL 223820, 1992 U.S.Dist. LEXIS 3233 (N.D.Ill.1992). In exchange, employees gave up certain damages recoverable in common law negligence actions. *Id.* Thus, today, the IWCA prohibits an employee from pursuing common law and statutory actions against the employer for injuries received in the course of employment. *Id.* The negligence standard of liability was abrogated with the enactment of IWCA. Any cause of action against CHC sounding in negligence is barred by IWCA. Accordingly, Count II is dismissed with prejudice.

### III. *Plaintiff's Intentional Infliction of Emotional Distress Claim*

In Count III, Plaintiff asserts a claim for intentional infliction of emotional distress. Defendant CHC contends that (1) this claim is also barred by the IWCA, and (2) Plaintiff failed to adequately allege a claim for intentional infliction of emotional distress. Plaintiff contends that her intentional infliction of emotional distress claim escapes the exclusivity rule of the IWCA because the actions of Passi, Price, Silva, Madonna, and other employees were intentional and not "accidental." (Reply at ¶ 5.)

■ A plaintiff may escape the exclusivity rule of the IWCA by proving that an injury: (1) was not accidental; (2) did not arise from her employment; (3) was not received during the course of her employment; or (4) was not compensable under the Act. *Meerbrey v. Marshall Field & Co.*, 139 Ill.2d 455, 151 Ill.Dec. 560, 564, 564 N.E.2d 1222, 1226 (Ill.App.Ct.1990). In the context of the IWCA, "accidental" " 'encompasses anything that happens without design or event which is unforeseen by the person to whom it happens.' " *Meerbrey*, 151 Ill.Dec. at 564, 564 N.E.2d at 1226 (quoting *Pathfinder Co. v.*

*Industrial Comm'n*, 62 Ill.2d 556, 343 N.E.2d 913, 917 (1976)). An intentional injury by a co-employee is accidental from both the employee's and employer's point of view, "where the employer did not direct or expressly authorize the co-employee to commit the assault." *Meerbrey*, 151 Ill.Dec. at 564, 564 N.E.2d at 1226. Thus, a plaintiff is barred from pursuing a separate cause of action against the employer for the intentional tort of a co-employee unless the employer directed or expressly authorized the tortious conduct.[5] *Id.*

■ Plaintiff's allegation that the intentional injury by her co-employees was not accidental is not enough to escape the IWCA's exclusivity provision. This is because Plaintiff has not pled facts that suggest that CHC "directed" or "expressly authorized" the conduct of Passi, Price, Silva, Madonna, or other employees to commit the intentional injury.

■ Under Illinois law, an employee also may state a cause of action against the employer for injuries which the "employer or its alter ego intentionally inflicts upon an employee or which were commanded or expressly authorized by the employer." *Meerbrey*, at 1226. The employee may allege that the employer or its alter ego committed the intentional act causing the injury. *Id.* In order to state a cause of action under an alter ego theory, however, plaintiff must allege that the acting employee is the "alter ego" of the employer. *Fitzgerald v. Pratt*, 223 Ill.App.3d 785, 166 Ill.Dec. 200, 203, 585 N.E.2d 1222, 1225 (Ill.App.Ct.1992).

■ Plaintiff's allegations are not enough to maintain a cause of action under this theory, either. Plaintiff alleges that the Defendant intentionally inflicted emotional distress because it failed to take appropriate steps to prevent the continued harassment of its employees. (Compl. ¶ 36.) These allegations sound in a *respondeat superior* theory of liability. Plaintiff has not pled any facts that support an alter ego theory. No cause of action based upon this theory can be main-

5. This Court notes that a plaintiff is not barred from pursuing a separate cause of action against a co-employee who intentionally caused plain- tiff's injury. *Meerbrey*, 151 Ill.Dec. at 567, 564 N.E.2d at 1229.

tained on the allegations contained in the Complaint as it stands.

Accordingly, Count III must be dismissed. Plaintiff has failed to allege "any set of facts which would entitle the plaintiff to relief" under either of the theories available under Illinois law. *See Ellsworth v. City of Racine,* 774 F.2d 182, 184 (7th Cir.1985), *cert. denied,* 475 U.S. 1047, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986) (citations omitted). Because it appears from the facts alleged that Plaintiff *might* be able to allege those facts necessary to maintain a claim, Plaintiff is given the opportunity to amend her Complaint to state a claim for intentional infliction of emotional distress against CHC.

### Conclusion

For the reasons cited above, Defendant's motion is granted. Paragraphs 11 and 26 are stricken.[6] Count II is dismissed with prejudice. Count III is dismissed without prejudice. Plaintiff is given ten days in which to submit her amended complaint.

---

**6.** If Plaintiff elects to drop Count III of her complaint, Plaintiff's request for a jury trial will be struck as well, for the reasons discussed above.